M. Lois Corson, et al. [1] v. Commissioner. Corson v. Commissioner
Docket Nos. 59603, 59604, 60425.
United States Tax Court
T.C. Memo 1965-214; 1965 Tax Ct. Memo LEXIS 115; 24 T.C.M. (CCH) 1107; T.C.M. (RIA) 65214; August 10, 1965
*115 Petitioner, Harry J. Alker, Jr., was convicted in a criminal trial in the United States District Court for the Eastern District of Pennsylvania of filing false and fraudulent returns for 1947, 1948, 1949, and 1950. In these proceedings respondent has asserted deficiencies and fraud penalties for those years and also for the prior years 1942 to 1946, inclusive. Held: On the evidence that respondent's determination of fraud for the years 1947 to 1950, inclusive, is sustained but that respondent has failed to prove fraud for the years 1942 to 1946, inclusive. Held, further, the deficiencies determined for the prior years 1942 to 1945, inclusive, are barred by the statute of limitations. Held, further, that, except for the adjustments required by the stipulation or the Opinion herein, the deficiencies for 1946, for which no return was filed, and for the years 1947 to 1949, inclusive, are sustained for lack of proof of error in respondent's determination. Held, further, the additions to tax under section 294(d)(1)(A), I.R.C. 1939 (failure to file declaration of tax), for the years 1946, 1947, 1948, 1949, and 1950, are sustained. Held, further, the deficiencies determined against *116 petitioners M. Lois Corson and Marion Alker, each for the years 1948 and 1950, except for adjustments in accordance with this Opinion, are sustained for lack of proof of error in respondent's determination. Robert M. Taylor, for the petitioners. Stephen P. Cadden and William J. Hagan, for the respondent. HOYT
HOYT, Judge: These consolidated proceedings involve income tax deficiencies and additions to tax as follows: HARRY J. ALKER, JR., Docket No. 60425
Additions
to the Tax
Sec. 294(d)(1)(A)
Penalties
IRC 1939
Sec. 291(a)
(10%, failure to
Sec. 293(b)
IRC 1939
Deficiency
file declaration
IRC 1939
(25%, de-
Year
Determined
estimated tax)
(50%, fraud)
linquency)
1942
$ 6,965.77
$ 3,482.88
1943
5,358.26
$ 535.83
2,679.13
1944
6,247.30
624.73
3,123.65
$ 1,561.83
1945
7,078.83
707.88
3,539.42
1946
7,098.89
709.89
3,549.45
1,774.72
1947
70,591.85
7,059.19
35,295.93
17,647.96
1948
55,241.13
5,524.11
27,620.57
1949
223,143.80
22,678.69
111,571.90
55,785.95
1950
54,053.85
5,405.39
27,026.93
13,513.46
Totals
$435,779.68
$43,245.71
$217,889.86
$90,283.92
*117 M. LOIS CORSON, Docket No. 59603
Year
Deficiency Determined
1948
$1,297.73
1950
3,112.23
Total
$4,409.96
MARION ALKER, Docket No. 59604
1948
$2,713.87
1950
5,049.06
Total
$7,762.93
Respondent also determined additions to tax against Harry J. Alker under section 294(d)(2), (underestimate of estimated tax), for each of the years 1943 to 1950, inclusive. Respondent now concedes that these additions to tax should be eliminated. Petitioners contest the deficiency in tax and additions to tax for all years involved, and rely on the statute of limitations to bar assessment for some of the years involved. Findings of Fact Some of the facts have been stipulated and are incorporated herein by reference. Also by stipulation of the parties the entire record in the prior criminal case, United States v. Alker, in the United States District Court for the Eastern District of Pennsylvania, has been introduced in evidence in this proceeding. Harry J. Alker, Jr., the petitioner in Docket No. 60425, hereinafter called "petitioner," has his principal residence in Norristown, Pennsylvania, and also maintained residence at the Warwick Hotel in Philadelphia during *118 the years before us. M. Lois Corson, a widow, (Docket No. 59603), and Marion Alker, unmarried, (Docket No. 59604), are sisters of petitioner. Lois Corson resided with petitioner at Norristown and at the Warwick Hotel, and Marion Alker also resided at Norristown and at another hotel in Philadelphia. All of the petitioners filed Federal income tax returns for the respective yearse involved with the collector of internal revenue at Philadelphia. However, no return was filed by petitioner for 1946. The returns filed by petitioner were in some respects incomplete and were lacking in detail, schedules and other required information. Petitioner, as already noted, failed to file a return for 1946, and filed delinquent returns for 1947, 1949, and 1950 without reasonable cause or excuse. The 1947 return was not filed until April 15, 1949; the 1949 return was not filed until February 28, 1952, and the 1950 return was not filed until February 29, 1952. Petitioner also failed to file any declarations of estimated tax for any of the years before us, without reasonable cause or excuse. The income or loss reported by the petitioners, the income determined by respondent, the tax shown due by petitioners' *119 returns, and the tax due as determined by respondent, are as follows: Harry J. Alker, Jr.
Net Income
Net Income
Tax Determined
or Loss
Determined by
Tax Shown
by
Year
Reported
Respondent
on Return
Respondent
1942
($12,817.28)
$ 21,288.02
0
$ 6,965.77
1943
0
16,802.00
0
5,358.26
1944
( 12,774.51)
18,042.07
0
6,247.30
1945
492.48
19,578.27
0
7,078.83
1946
No return filed
21,379.50
0
7,098.89
1947
( 11,238.54)
109,185.76
0
70,591.85
1948
( 10,204.29)
95,569.51
0
55,241.13
1949
14,975.77
308,245.12
$3,643.11
223,143.80
1950
( 27,512.02)
92,703.83
0
54,053.85
M. Lois Corson
1948
$ 1,381.61
$ 7,549.53
$ 129.75
$ 1,427.48
1950
5,434.08
15,059.12
918.67
4,030.90
Marion Alker
1948
$ 794.71
$ 11,954.67
$ 32.33
$ 2,746.20
1950
10,424.42
22,153.66
2,332.07
7,381.13
During all of the years involved in these proceedings, petitioner was a practicing attorney with his principal office located in the Land Title Building in Philadelphia, Pennsylvania. His chief sources of income were the practice of his legal profession, director's fees, executor commissions, dividends, interest, *120 and capital gains. Petitioner's books and records were kept by various of his office employees and his income tax returns were sometimes prepared by an accountant. The original books and records were not produced at trial or offered in evidence. They were incomplete and entirely inadequate to establish his correct income or expenses. A considerable portion of petitioner's legal practice consisted in the preparation of income and estate tax returns and the handling of estate and tax matters for his clients. Petitioner is now about 80 years of age. He was in ill health during some of the years under consideration, and was hospitalized from time to time. He has never been married. He has lived with his sister, Lois, since the death of her husband in 1942. In 1956 petitioner was convicted in the United States District Court for the Eastern District of Pennsylvania, of willfully attempting to defeat and evade Federal income taxes by filing false and fraudulent returns for each of the years 1947 to 1950, inclusive. In this criminal proceeding petitioner was convicted on four counts of the indictment which charged him with the receipt of net income as follows: Year
Income
1947
$83,591.25
1948
64,368.63
1949
71,274.99
1950
78,502.24
*121 On appeal, petitioner's conviction was affirmed, United States v. Alker, 260 F. 2d 135 (C.A. 3, 1958). Respondent's determination of petitioner's income for the years 1942 to 1946, inclusive, is based on petitioner's personal expenditures for those years as found by an examining revenue agent. The agent reported that he had been unable to find books and records from which petitioner's income could be determined on the basis of gross receipts and business expenditures. The principal expenditures as reported by the agent in each of the years were certain recurring items, such as life insurance premiums, rents, medical expenses, contributions, taxes, interest payments, and "other living expenses." Some of the expenditures, such as doctor bills and contributions, were allowed as deductions by respondent in computing petitioner's net income. The deficiencies determined by respondent for the years 1947 to 1950, inclusive, were established on the basis of specific unreported items of income, evidence of which was found in petitioner's personal books and records and other sources, and the disallowance of certain claimed deductions. Legal fees reported by petitioner in his *122 1947 return in the amount of $68,307.79 were increased by respondent to $147,948.41. The latter figure includes $44,656 of allegedly "unreported" fees. Expenses of $76,744.33 were claimed in the return and $46,606.95 was allowed by respondent. Petitioner's net income for the year was increased from a loss of $11,238.54 as reported to $109,185.76. Respondent's determination for the subsequent years 1948, 1949, and 1950 follow a similar pattern. Respondent also included in petitioner's income for 1947 dividends, rent, and capital gains which petitioner received and realized but which he failed to report in his return. In 1948 respondent increased net income from a loss of $10,204.29 as reported to $95,569.51; in 1949 from $14,975.77 to $308,245.12; and in 1950 from a loss of $27,512.02 to $92,703.83. Petitioner received 200 shares of stock of the Freihofer Baking Company in payment of fees for legal services during the years 1948, 1949, and 1950. The parties have stipulated that of these shares, 50 were received by petitioner in 1948, 100 in 1949, and 50 in 1950, and that these shares shall be considered to be taxable income of petitioner. Said shares had a value of $510 per share *123 when received by petitioner and therefore represented taxable income to him in the years indicated as follows: 1948
$25,500
1949
51,000
1950
25,500
In each of the years from 1947 through 1950 petitioner deliberately failed to report substantial amounts of income which he had received and part of each deficiency determined by respondent for those years is due to fraud with intent to evade tax. M. Lois Corson Petitioner, M. Lois Corson, reported net income for 1948 on her return of $1,381.61 which respondent increased as follows in his deficiency notice for that year: Increase in rental income
$2,952.16
Disallowance of interest paid
2,715.48
Disallowance of taxes paid
500.28 This resulted in corrected net income of $7,549.53 for 1948. For the year 1950 respondent made adjustments in M. Lois Corson's income as follows: Increase in dividends
$ 716.20
Disallowance of loss from rentals
3,918.89
Disallowance of interest paid
4,989.95 This resulted in increasing net income reported of $5,434.08 to $15,059.12. Her husband, Henry F. Corson, with whom she owned a large residential property at Villanova, Pennsylvania, in *124 joint tenancy, (tenancy by the entireties), died in 1942, and thereafter she made her home with her brother, petitioner, Harry J. Alker, Jr., either in Norristown or at the Warwick Hotel. She did not thereafter reside in this home. Soon after her husband's death, Lois began to attempt to sell the Villanova property or to rent it. These efforts were unsuccessful until 1948 when a prospective purchaser moved in for a month, paying $500 as rental and $15,000 as a down payment on a sales contract. However, these purchasers forfeited the payment and did not complete the purchase. During 1948 Lois expended various sums for advertising, for upkeep and maintenance of this property, for interest on the mortgage thereon, for taxes and for a caretakercustodian. She likewise expended various amounts for similar expenses in 1950 but she received no rental income from that property in 1950. Lois eventually sold the property in 1953, a year not before us. M. Lois Corson abandoned the Villanova property as a residence in the early 1940's and thereafter held same for sale and/or rent. During the years 1948 and 1950 she held this property for the production of income. In 1948 Lois paid real property *125 taxes of $501.28, mortgage interest of $834.25, and other ordinary and necessary expenses of maintaining, managing and conserving this property of $1,846.07. In 1950 Lois paid real property taxes of $598.29 and other ordinary and necessary expenses of maintaining, managing and conserving this property of $1,675.64. Marion Alker Petitioner, Marion Alker, reported net income for 1948 in her return of $794.71 which respondent increased as follows in his deficiency notice for that year: Increase in dividends
$8,103.17
Increase in rental income
1,806.79
Disallowance of medical expense
1,250.00
These adjustments resulted in corrected net income of $11,954.67 for 1948. For the year 1950, respondent made adjustments in Marion Alker's income as follows: Increase in dividends
$2,891.96
Increase in rental income
984.84
Disallowance of medical expense
1,250.00
Disallowance of interest paid
6,602.44 This resulted in increasing net income reported of $10,424.42 to $22,153.66 for 1950. Opinion We shall not attempt here to discuss all of the mass of evidence on which the proceedings before us have been submitted. The entire record in the criminal *126 case against petitioner was placed in evidence before us by stipulation, and other evidence was adduced at the trial in these proceedings. [2]
Respondent's determination as to all of the years involved is prima facie correct as to the amount of the deficiencies determined. We have examined all of the evidence before us and except as hereinafter specifically outlined we do not find any basis for setting aside respondent's determination of the deficiencies against any of petitioners for any of the taxable years. The petitioners' evidence is generally entirely inadequate to overcome the presumptive correctness of the respondent's determinations. Harry J. Alker, Jr. As to the fraud issue, we must regard petitioner's conviction in the criminal proceeding of willfully attempting to evade taxes by filing false and fraudulent returns for the years 1947 to 1950, inclusive, as compelling evidence requiring our ultimate determination in these proceedings that petitioner filed false and fraudulent income tax returns for those years with intent to evade tax and that a part of *127 the deficiency for each of such years was due to petitioner's conscious and deliberate fraud. Stagecrafters' Club v. District of Columbia Division of American Legion, 111 F. Supp. 127 (D.C.D.C., 1953); Abraham Galant, 26 T.C. 354 (1956). Compare John W. Amos, 43 T.C. 50 (1964); Arctic Ice Cream Co., 43 T.C. 68 (1964). On Alker's appeal from his conviction in the District Court, the Court of Appeals for the Third Circuit made a careful review of the evidence adduced at the trial, all of which is before us in this case, and found that it amply supported petitioner's conviction for filing false and fraudulent returns for the years 1947 through 1950. The following quoted excerpt from the Appellate Court's opinion indicates the conclusiveness of the proof of petitioner's guilt: The majority of the sixty witnesses called by the Government testified to specific payments made to appellant either for legal services, dividends, interest or directors' fees. Cancelled checks were produced to substantiate their testimony. * * *
Comparing the professional fees set forth in the preceding chart with the gross receipts from profession *128 listed in appellant's returns, reveals in each instance substantial nonreporting and understatement: * * *
In neither appellant's 1947 nor 1948 return was any sum styled dividends or interest reported. For 1949 and 1950 appellant included in his return as dividends $3,005.50 and $8,143.25 respectively, in both instances the amounts were significantly less than the proof adduced. The evidence thus portrayed renders appellant's contention untenable and, accordingly, demonstrates that the Government has shouldered the burden of understatement. * * *
Thus evaluated the court concludes that the evidence adduced under any standard was competent to sustain a finding of substantial understatement. * * *
The trial consumed twenty-one days encompassing four months. The record indicates that the substantive proof overwhelmingly pointed toward guilt. In fact, the evidence was so strong no jury could have acquitted. Our own review of all of the evidence in the record before us leaves no doubt in our minds that respondent has carried his burden of proving fraud herein by clear and convincing evidence and that a portion of the deficiency found by the respondent in each of the *129 taxable years 1947 through 1950 is due to fraud with intent to evade tax. As to the years 1942 to 1946, inclusive, which are also before us, the situation is different. Those years were not involved in the criminal proceedings and there has been no previous judicial determination of fraudulent returns having been filed by petitioner for those years. Without the establishment of fraud, the taxes due, if any, for all of those years except 1946 are barred by the statute of limitations. Since no return was filed by petitioner for 1946, the statute of limitations is inoperative as to that year. For support of his determination of fraud for the earlier years, 1942 to 1946, inclusive, respondent depends, to a large extent, on the statements and figures contained in the report of a revenue agent who examined petitioner's books and records. This report was placed in evidence by stipulation. The revenue agent did not appear as a witness. As is well known to respondent, revenue agents' reports are received in evidence by this Court, not as proof of the actual figures or statements contained therein but for the purpose of showing the basis for respondent's determination. Unless substantiated *130 by books, records or other competent evidence the statements contained in the revenue agent's report do not meet the burden of proof resting on respondent to establish fraud by clear and convincing evidence. On his part, petitioner places chief reliance on the testimony and findings of an accountant whom he employed after conclusion of the criminal trial to make a summary of his books and records for the entire 1942-1950 period. The accountant examined petitioner's cash receipts and disbursement account, bank statements, cancelled checks, and other available office records. He also examined the transcript of the testimony taken at the criminal trial, and other documents which had been furnished him by petitioner. His summaries of petitioner's taxable income for the years involved were received in evidence without objection of respondent's counsel, but with reservations as to their "correctness" and "completeness." The summaries show only small amounts of net income, or for some years net losses, for the years 1942 to 1946, inclusive, except for 1944 which was omitted because of insufficient records. The 1947-1950 summaries show "tax base" net income as follows: Tax Base
Year
Net Income
1947
$ 18,611.69
1948
5,939.20
1949
22,876.67
1950
(41,209.21)
*131 The accountant testified that petitioner's records were incomplete and indefinite and that his summaries were based in part on his own conjectures and conclusions. Without agreement of the parties the summaries prepared by the accountant cannot be accepted as accurately reflecting petitioner's taxable income. In this respect they stand on no better footing than the revenue agent's report. There is evidence of record, independent of the reports of the revenue agent and petitioner's accountant, that in the years 1942 to 1946, inclusive, petitioner received various sums of money not identifiable in the income which he reported in his returns but it is not shown that this income was in fact omitted from the gross income reported or that the omissions, if such there were, were with intent to evade tax. While there is evidentiary support for respondent's determination that for some of the years involved petitioner's expenditures did exceed the amount of the income reported in his returns, there is lacking competent proof that the expenditures were all made from current earnings and not from accumulated or borrowed funds. Except for the figures supplied by the revenue agent's report *132 and the agent's own opinion and conclusions, the evidence is also lacking that petitioner's failure to report all of his income for the years 1942 to 1946, inclusive, if there was such failure, was due to fraud with intent to evade tax. Petitioner's conviction for filing false and fraudulent returns for the later years 1947 to 1950, inclusive, carries no presumption of fraud as to the earlier years. It is noted that there was a considerable increase in petitioner's income as determined by respondent after 1946. The increase was from approximately $21,000 in 1946, which was the highest for the five year 1942-1946 period, to approximately $109,000 in 1947. The income figure is above $90,000 for each of the three years following and for 1949 is over $300,000. But even assuming that there was a substantial understatement of net income in petitioner's returns for each of the years 1942-1946, as respondent has determined, the evidence is not convincing that the understatement was due to fraud with intent to evade tax rather than to petitioner's failure to keep adequate books and records, or to give proper attention to the preparation of his income tax returns, or to other exculpating causes. *133 The unwieldiness of the massive record in these proceedings, the failure of the parties to provide the Court with concise statements of facts supporting their contentions, the lack of succinct references in their briefs to the sources of the requested findings of fact, and the questionable dependability of much of the evidence of record have made it difficult for us to find facts on which to base a ruling on the merits on many of the questions presented. On the record as a whole, we conclude respondent has failed to carry his burden of proof of fraud for any of the years 1942 to 1946, inclusive, and that, except as specifically found, the petitioner has failed to show error in respondent's determination of the deficiencies for any of those or the later years. In the absence of proof of fraud the deficiencies determined for the years 1942, 1943, 1944, and 1945 are barred by the statute of limitations. For 1946 no return was filed by petitioner and the statute of limitations is inoperative. Respondent's determination that petitioner had net income in that year of $21,379.50 is prima facie correct and the burden of proof to the contrary rested on petitioner. The evidence of record *134 is lacking of such proof. There is in fact no competent evidence before us on which we could make an accurate reconstruction of petitioner's taxable income for 1946 or any of the other years involved. The deficiencies determined against the petitioner for the years 1946 through 1950 are accordingly sustained, as are the 294(d)(1)(A) additions and the 291(a) penalties for the years asserted. The 293(b) fraud penalties are also sustained for the years 1947 through 1950. The deficiencies determined against M. Lois Corson and Marion Alker for 1948 and 1950 result from the following adjustments: 1948
1950
M. Lois Corson
Net Income reported
$ 1,381.61
$ 5,434.08
Income in rentals
2,952.16
0
Increase in dividends
0
716.20
Disallowance of interest paid
2,715.48
4,989.95
Disallowance of taxes paid
500.28
0
Disallowance of loss from rental properties
0
3,918.89
Corrected Net Income
$ 7,549.53
$15,059.12
Marion Alker
Net Income reported
$ 794.71
$10,424.42
Increase in dividends
8,103.17
2,891.96
Increase in rental income
1,806.79
984.84
Medical expenses disallowed
1,250.00
1,250.00
Interest paid disallowed
0
6,602.44
Corrected Net Income
$11,954.67
$22,153.66
*135 What has been said above in regard to the inconclusiveness of the evidence pertaining to petitioner, Harry J. Alker, Jr., also applies generally to the others. There is lacking any showing that the net taxable income of these petitioners is other than as determined by respondent, except in the case of M. Lois Corson. M. Lois Corson In the case of Lois our findings indicate our conclusion that her Villanova residence where she had formerly lived with her husband, the late Henry F. Corson, had been abandoned by her as residential property in 1942 or shortly thereafter. From that time on and during 1948 and 1950, the years before us, this property was held by her for sale and/or rent. In 1948 she received rental income of $500 from this property which she reported as such. She has persuaded us by her testimony and the evidence introduced at trial that the amounts expended, as set forth in our findings of fact, for taxes, interest on mortgage and for upkeep and repairs of this property were ordinary and necessary expenses paid by her in the respective years for the conservation and maintenance of income-producing property and are therefore deductible. William C. Horrmann, 17 T.C. 903 (1951); *136 Mary Laughlin Robinson, 2 T.C. 305 (1943). Using our best judgment on the record before us, we conclude that M. Lois Corson should be permitted to deduct $3,181.60 for 1948 and $2,273.92 for 1950 for these items. Lois has failed to overcome the presumption of correctness attaching to the respondent's determination with respect to the other deductions she has sought for depreciation, storage, interest payments allegedly made, payments to a so-called housekeeper-caretaker, etc., which we cannot find on the evidence presented were ordinary and necessary or paid for the production or collection of income or for the conservation or maintenance of income-producing property. Respondent's determination disallowing these deductions is therefore sustained as to both 1948 and 1950, and except as we have indicated above and in our findings of fact the deductions sought by Lois Corson are denied. Likewise as to the additions to income for both years the petitioner, Lois Corson, has not sustained her burden of proving error in respondent's determination and they are therefore also upheld. Marion Alker Petitioner, Marion Alker, has utterly failed to overcome the presumptive correctness *137 of respondent's determination as to her additional income and disallowed deductions for both 1948 and 1950 and respondent's determinations as set forth in his deficiency notice to Marion are therefore sustained. It is apparent that a substantial portion of the deficiencies determined against M. Lois Corson and Marion Alker are due to the inclusion in their respective incomes of items which respondent has also included in the income of petitioner. There also appear to be certain disallowed deductions which are allowable to one or the other of the petitioners. In his brief, respondent calls attention to these discrepancies, stating: Marion Alker's dividends were underreported in the amount of $248.80 for the year 1948 and possibly over-reported in the sum of $11,102.04 for the year 1950. Respondent has added $2,517.50 of Marion Alker's 1948 dividends and $11,905.05 of her 1950 dividends to the income of Harry J. Alker, Jr. It appears necessary, because the case of Harry J. Alker, Jr., is not yet decided at this time, to defer making a final decision on this issue until the differences between the related parties can be reconciled and the Government's interest properly protected. *138 * * * The evidence shows that Harry J. Alker, Jr., made a practice of registering securities purchased for his own account from the proceeds of loans made in the names of other persons, i.e., in the names of Marion Alker and M. Lois Corson. It is believed that the respondent's determination with respect to dividends received and taxable to Mrs. Corson should, in the absence of other evidence, be accepted. It may be possible that Mrs. Corson's dividends were over-reported by the amount of $7,441.03 for the year 1948 and by the amount of $13,199.70 for the year 1950. It appears necessary because the case of Harry J. Alker, Jr., is also being considered at this time, to defer making a final decision on this issue until the differences between the related parties can be reconciled and the Government's interests properly protected. Respondent further states in his brief that it appears that rental properties held in the name of Marion Alker were in fact the property of the petitioner, Harry J. Alker, Jr. There is a suggestion that Harry paid some or all of the rental expenses claimed as deductions on Marion's 1948 and 1950 returns and that these have been allowed to Harry. It is *139 also urged by respondent on brief that various interest deductions claimed by Marion Alker on her returns were paid either by or for the benefit of Harry J. Alker, Jr., and that all interest paid on these loans had been allowed as deductions to Harry J. Alker, Jr. We agree with respondent that competent evidence of payment of these disputed deduction items has not been presented by Marion Alker, and therefore we have, as indicated above, sustained the respondent's disallowance. To the extent that our opinion sustains the respondent's determinations as to items of income for 1948 and 1950 taxed to petitioner, Harry J. Alker, Jr., and also to M. Lois Corson and Marion Alker, such items should be excluded from the determination of deficiencies for those years against Lois and Marion. Likewise to the extent that deductions for interest or other allowable items have been denied herein to M. Lois Corson and Marion Alker, they should stand as allowable to petitioner, Harry J. Alker, Jr., wherever they have been allowed to him by respondent's determinations. Adjustments for all of these items, when required, as well as any others required by our holdings herein, will be made under Rule *140 50 settlement. Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Marion Alker, Docket No. 59604; and Harry J. Alker, Jr., Docket No. 60425.↩
2. The record in the criminal proceeding consists of some 1,700 pages of testimony and hundreds of exhibits.↩