MARY LAUGHLIN ROBINSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 105362.    Promulgated June 29, 1943.

*Walter W. McVay, Esq.*, for the petitioner.
*John T. Rogers, Esq.*, for the respondent.

#### OPINION.

DISNEY, *Judge:* In this case, which involves the calendar years 1936 and 1937. memorandum opinion was entered on June 11, 1942, in substance denying deduction of expenses of maintenance of and de-

preciation upon property formerly occupied by the petitioner as a home, but abandoned as such due to establishment of a home elsewhere, where the petitioner through real estate firms made diligent, but unsuccessful, efforts to rent or sell the property. It was held that mere abandonment of the home did not, under cases then controlling, constitute conversion of the former home into business property. Upon appeal the decision was affirmed. but the case was remanded with leave to consider the applicability of the provisions of section 23 of the Internal Revenue Code. as amended by section 121 of the Revenue Act of 1942.[1] Respondent filed his motion that said section be held not applicable. and hearing has been had upon the motion and in compliance with the mandate.

It is our opinion that the section, expressly made applicable to the taxable years, does here apply, and requires allowance of deduction of expense of maintenance, and depreciation upon the property. The statute in clear terms provides for the deduction of expense of production of income, or for the management, conservation, or maintenance of property held for the production of income, and provides for the deduction of depreciation upon property held for the production of income. The property formerly constituting the home, under such language, no longer need be converted into business property as a prerequisite to allowable deductions. If therefore the property was held for the production of income, both maintenance expense and depreciation are deductible. Regulations 103, as amended to cover section 121 of the Revenue Act of 1942, provides in part:

> The term "income" for the purpose of section 23 (a) (2) comprehends not merely income of the taxable year but also income which the taxpayer has realized in a prior taxable year or may realize in subsequent taxable years; and is not confined to recurring income but applies as well to gains from the disposition of property. For example, if defaulted bonds, the interest from which if received would be includible in income, are purchased with the expectation

---

[1] SEC. 121. NON-TRADE OR NON-BUSINESS DEDUCTIONS.

(a) DEDUCTION FOR EXPENSE.—Section 23 (a) (relating to deduction for expenses) is amended to read as follows:

"(a) EXPENSES.—

"(2) NON-TRADE OR NON-BUSINESS EXPENSES.—In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income."

(c) DEPRECIATION DEDUCTION.—The first sentence of section 23 (1) (relating to deduction for depreciation) is amended to read as follows: "A reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

"(1) of property used in the trade or business, or

"(2) of property held for the production of income."

(d) TAXABLE YEARS TO WHICH AMENDMENTS APPLICABLE.—The amendments made by this section shall be applicable to taxable years beginning after December 31, 1938.

(e) RETROACTIVE AMENDMENT TO PRIOR REVENUE ACTS.—For the purposes of the Revenue Act of 1938 or any prior revenue Act the amendments made to the Internal Revenue Code by this section shall be effective as if they were a part of such revenue Act on the date of its enactment.

of realizing capital gain on their resale, even though no current yield thereon is anticipated, ordinary and necessary expenses thereafter incurred in connection therewith are deductible. Similarly, ordinary and necessary expenses incurred in the management, conservation or maintenance of a building devoted to rental purposes are deductible notwithstanding that there is actually no income therefrom in the taxable year, and regardless of the manner in which or the purpose for which the property in question was acquired. Expenses incurred in managing, conserving, or maintaining property held for investment may be deductible under this provision even though the property is not currently productive and there is no likelihood that the property will be sold at a profit or will otherwise be productive of income and even though the property is held merely to minimize a loss with respect thereto. * * *

\* \* \* \* \* \* \*

Ordinary and necessary expenses in connection with the management, conservation, or maintenance of property used as a residence by the taxpayer or acquired by him for such use are not deductible, even though the taxpayer makes efforts to sell the property at a profit or to convert it to income-producing purposes, and even though the property is not occupied by the taxpayer as a residence unless prior to the time that such expenses are incurred the property has been rented or otherwise appropriated to income-producing purposes by some affirmative act and has not been reconverted.

The facts are, in short, that in September 1931 the petitioner inherited a residential property, and immediately moved into it with intent to live permanently therein and to abandon her former home in Pittsburgh, Pennsylvania, the property herein involved. At the time of trial in 1942, she with her family still resided in the inherited residence. and had never after September 1931 lived in the former home. Early in 1932 she listed the former home for sale with two real estate firms in Pittsburgh, for rent or for sale. and although the firms made diligent efforts and carried on numerous negotiations with prospective purchasers or tenants. neither firm was ever able to rent or sell the property. From January 1, 1934. and during the taxable years, 1936 and 1937, the garage, which was separate from the residence. was rented to the caretaker of the premises for $25 a month. That amount was reported as income. In each of the taxable years $840 was paid as wages to the caretaker. Deduction of these items and depreciation claimed on the house was disallowed by the Commissioner.

In this matter the taxpayer no longer used the property as a residence. and prior to the time the expenses were incurred the property had been appropriated to income-producing purposes by affirmative action. in that the property had been abandoned as a residence and had been listed for rent or for sale with two real estate firms, which had made diligent efforts and carried on numerous negotiations with prospective purchasers or tenants. Though such efforts were unavailing, for the firms were unable either to rent or sell the house, nevertheless. in our opinion the property was held for the production of income, within the meaning both of the statute and the regulation.

It is to be noted that the latter includes in the term "income" gain from disposition of property. The petitioner was clearly holding the property for sale—attempting to sell it—so was holding it for production of income from gain from sale. That there need not actually be income in order for the statute to apply, within the regulation, appears from the examples given of deductions allowable on bonds purchased with expectation of realizing taxable gain on sale, though no current yield is anticipated, and on a building devoted to rental purposes, notwithstandinng that there is actually no income therefrom; also where property is held for investment. though not currently productive and there is no likelihood that the property will be sold at a profit or be otherwise productive of income.

Though the regulation, above quoted, does state that if property is *used* as a residence, or *acquired for* such, the deductions do not apply, though efforts are made to sell or convert to income-producing purposes, even though the property is not occupied as a residence, it goes on to say that this is true *unless* the property is rented "*or* otherwise appropriated to income-producing purposes." Moreover, such language, in fact, does not cover the case of a property once used as residence. but abandoned as such, but strictly covers only a case where the property is actually used as a residence or acquired for that purpose, but instead of being so used. because of a mere change of mind, efforts are made to sell or convert. Herein we find also removal from the property, confirming in an overt and physical way the intent to abandon the former use as a home. Earlier language of the regulation allows the expense of maintenance "of a building devoted to rental purposes * * * notwithstanding that there is actually no income therefrom in the taxable year, and regardless of the manner in which or the purpose for which the property in question was acquired." In other words, it might have been acquired as a home, provided it had been "devoted to rental purposes." The property here was clearly "devoted to rental purposes." The statute and regulation are both broad in scope and amply cover the situation here presented.

Earlier cases, such as *Morgan* v. *Commissioner*, 76 Fed. (2d) 390, involving a question whether sale of an abandoned home, sold two years later without having been rented, was a sale in a "transaction entered into for profit," under section 23 (e) of the Revenue Act; and *Phipps* v. *Helvering*, 124 Fed. (2d) 292. involving the question whether loss on demolition of a former home was loss in a profit transaction, do not control under the amendment of 1942. for had Congress, in enacting section 121 intended nothing more than to cover transactions "entered into for profit" they would, no doubt, have used that expression. already used in section 23 (e) and continued therein. That language, however, was not used. either in section 121 (a) as to expenses, or in section 121 (c) broadening the field of allowable depreciation. In both the

expression used is "held for the production of income." Obviously, Congress thereby meant something different than "transaction entered into for profit" left in section 23 (e).

The statute does not require that the property be actually used for production of income. that is, be actually rented. but only held for that purpose. It is to be noted that a portion of the premises, i. e., the garage. was actually rented. Though it was separate from the house. nevertheless such renting is indication of devotion of the premises to rental purposes, for it is reasonable to assume that, had the house been retained for residential purposes by the petitioner, the garage would have been likewise retained. as a necessary adjunct to such a home. Moreover, the renting of the garage might well destroy the ability to reoccupy the house at any time as a residence, one of the elements relied upon in *Rumsey* v. *Commissioner*, 82 Fed. (2d) 158, as reason for holding property not sold in a transaction "entered into for profit." The House of Representatives Committee Report (No. 2333), C. B. 1942–2. p. 410, with reference to the amendment, says:

> The existing law allows taxpayers to deduct expenses incurred in connection with a trade or business. Due partly to the inadequacy of the statute and partly to court decisions. nontrade or nonbusiness expenses are not deductible, although nontrade or nonbusiness income is fully subject to tax. The bill corrects this inequity by allowing all of the ordinary and necessary expenses paid or incurred for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income. Thus. whether or not the expense is in connection with the taxpayer's trade or business, if it is expended in the *pursuit of income*, or in connection with property *held* for the production of income, it is allowable. [Italics supplied.]

We conclude and hold that here there was "property held for the production of income," and that the depreciation thereon and the expense of maintenance thereof were deductible.

Reviewed by the Court.

*Decision of no deficiency will be entered.*

MELLOTT, *J.*, concurs only in the result.