John W. Meader v. Commissioner.
John W. Meader v. Commissioner
Docket No. 13821.
United States Tax Court
1948 Tax Ct. Memo LEXIS 173; 7 T.C.M. (CCH) 345; T.C.M. (RIA) 48103; June 3, 1948
John W. Meader, pro se. Howard M. Kohn, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $199.52 in petitioner's income and victory tax for 1943. The following errors are alleged in the amended petition: "(a) Inclusion in the computation of tax liability of the sum of $30.29, being a refund previously allowed, but subsequently repaid. "(b) Disallowance of the net loss of $656.51 resulting from the charter of a sailboat. "(c) Disallowance of the net gain of $34.83 resulting from the sale of the aforementioned sailboat." The first allegation of error, (a) above, was withdrawn at the hearing. Findings of Fact The petitioner is an individual residing *174 in the city of New York. He filed his income tax return for the calendar year 1943 with the collector of internal revenue for the first district of New York. In October 1940, the petitioner bought a sailboat for racing and recreation purposes for which he paid $800. He personally used the boat from the date of purchase up through the early months of the year 1942. From November 1941, throughout the years 1942 and 1943, the petitioner served as a special assistant to A. L. Gates, assistant secretary of the Navy Air Force, with headquarters in Washington, D.C. During that time, however, he maintained his residence at Garden City, New York. He used his boat a few times, on weekends, in 1942, and then turned it over to his crew for racing during the remainder of the 1942 season. At some unspecified time in 1942 the petitioner offered the boat for listing for sale or charter with the firm of Sparkman and Steven, Inc., yacht brokers of New York City. After the close of the 1942 racing season the petitioner boutht new sails for the boat at a total cost of $352.10, and later had the boat stored and cared for during the winter months. When the spring of 1943 arrived petitioner ordered *175 the boat put in commission and put back in the water. Late in July 1943, the boat was chartered to Cornelius Shields for the remainder of the season for $125. The charterer redelivered the boat to the petitioner at Peterson's Shipyard, Port Washington, New York, late in September 1943. Within a few days thereafter the petitioner sold the boat, together with the new sails which he had purchased the preceding October, for $900. During 1942 and 1943 the petitioner made the following expenditures in connection with the sailboat: $230.00
(October, 1942)
Sails
122.10
(March, 1943)
Sails
48.00
(April, 1943)
Insurance
257.81
(April, 1943)
Yard charges
Total $657.91
In his 1943 return petitioner computed a loss on the rental of the sailboat by deducting from the $125 received for rental the above-mentioned expenditures between October 1942 and April 1943, aggregating $657.91, plus $123.60, alleged depreciation for the year 1943, thereby showing on his return a net loss from the rental of the sailboat in the amount of $656.51. Petitioner reported a gain on the sale of the boat in September 1943 of $34.83, which he computed by using a cost basis for *176 the boat of $1,235.96, adjusted for depreciation from the time he acquired the boat in October 1940. The following computation is shown in a schedule attached to his 1943 return: Sched. B (Property Other Than Capital Assets) Col. 6 - Depreciation Allowed (or Allowable) Since Acquisition: Cost of Sailboat, 27 October, 1940
$ 800.00
Cost of Improvements: Rigging, Fittings and Equipment
230.60
Yard Work
205.36
Total Cost
$1,235.96
Annual Depreciation at 10%
$ 123.60
Depreciation: 1941 Season
$ 123.59
1942 Season
123.60
1943 Season (Boat Chartered)
123.60
Total Depreciation
$ 370.79
Opinion LEMIRE, Judge: The petitioner contends that the deductions claimed in his 1943 return on account of the sailboat were all ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income and, therefore, the provisions of section 23 (a) (2) of the Internal Revenue Code are applicable. He contends that the boat in question was converted to the production of income in 1942 and was used for that *177 purpose until the date of sale. He cites and relies upon Mary Laughlin Robinson, 2 T.C. 305. The petitioner testified that in the spring of 1942 he turned the boat over to his crew for their use for racing until the end of the 1942 season, which was in September. He further testified that he offered the boat for listing for sale or charter. There is no evidence that there was an acceptance of his offer for such listing or that any attempt was made by anyone to sell or charter the boat prior to July 1973. Petitioner further testified that at the end of the 1942 racing season he purchased new racing sails for the boat and had them stored and cared for during the winter months of 1942 and 1943. He also testified that in the spring of 1943 he had the boat placed in commission and put back in the water with the expectation of selling or chartering it, but there is no evidence as to whether or not petitioner used the boat in 1943 prior to the time it was chartered to Cornelius Shields. The respondent contends that the boat was purchased by the petitioner for sporting and pleasure purposes and was not appropriated to income-producing use until late in July 1943 and that consequently *178 the expenses and depreciation claimed up to that time are not deductible. We think the facts support the respondent's contention. On the evidence before us, we are unable to find that there was any appropriation of the property to a business use, such as was found in the Robinson case, supra, until the boat was chartered late in July 1943. There is no proof that the boat was not used by the petitioner, or at least available for his use, for sporting and pleasure purposes until that time. All of the expense deductions claimed were for expenses paid between October 1, 1942, and April 30, 1943. In the absence of proof that the boat was used for income-producing purposes during that period, the deductions must be allowed. See Warren Leslie, Sr., 6 T.C. 488. The petitioner also contends that the Commissioner erred in excluding the reported gain of $34.83 on sale of the boat. When the boat was returned to the petitioner in September 1943 he immediately sold it for $900. In his 1943 income tax return he reported a gain of $34.83, computed on a cost basis of $1,235.96, less depreciation for 1941, 1942, and 1943 in the aggregate amount of $370.79. There is no evidence of the *179 fair market value of the boat at the date of the conversion or of the actual depreciation sustained, other than the return. On the facts of record we must sustain the respondent's determination. Decision will be entered for the respondent.