William V. and Jeannette Moylan v. Commissioner.
Moylan v. Commissioner
Docket No. 3436-66.
United States Tax Court
T.C. Memo 1968-15; 1968 Tax Ct. Memo LEXIS 284; 27 T.C.M. (CCH) 84; T.C.M. (RIA) 68015; January 22, 1968. Filed William V. Moylan, pro se, 31-44 86th St., Jackson Heights, N. Y. Jay S. Hamelburg, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined a deficiency of $776.85 in petitioners' income tax for the year 1963. The issues for decision are: (1) Whether petitioners incurred in 1963 ordinary and necessary business expenses for travel and entertainment under the provisions of section 162, Internal Revenue Code of 1954; [1] (2) whether petitioners held certain property as rental property for the entire year 1963, rather than only for the period after September 1, 1963, entitling them to deduct related expenses incurred in that year; and 85 (3) whether petitioners are entitled to a deduction under section 170 for cash church contributions of $251 instead of $104 allowed by respondent. Findings of Fact Some *286 of the facts have been stipulated and are hereby found accordingly. William V. Moylan (herein called petitioner) and Jeannette Moylan, husband and wife, were residents of Jackson Heights, New York, when the petition in this case was filed. Their joint Federal income tax return for the calendar year 1963 was filed with the district director of internal revenue at Brooklyn, New York. Facts Relating to Entertainment and Travel Expenses In 1963, and for approximately 16 years prior thereto, petitioner was employed by Marquardt & Company, Inc., in New York City as an outside salesman of paper and related products. He was paid on a commission basis and was not reimbursed for any expenses incurred in the solicitation of sales. In the course of his sales activity, petitioner dealt directly with 12 or 14 "active" customers and frequently called upon at least 20 others. As was customary in his business, petitioner devoted considerable time and money to entertaining customers and prospective customers in an effort to enlarge existing accounts and to secure new accounts. The major portion of the entertainment expense claimed by petitioner involved amounts spent for cocktails and meals *287 at business luncheon meetings. These meetings of petitioner with one or a group of buyers constituted a significant facet of petitioner's sales work and were considered to be indispensable to the success of his business. Several expensive New York restaurants were patronized on these occasions, the bills generally being satisfied by petitioner's personal checks to the establishments. On at least one occasion, petitioner met a customer at a private club where the customer held a membership. The charges were made to the customer's account, and petitioner reimbursed him by personal check. Canceled checks, totaling $974.66, drawn upon petitioner's personal account with various restaurants as payees and canceled checks in varying amounts with individual payees were introduced into evidence to substantiate these expenditures. An additional $210 was claimed for cash tips based upon 15 percent of the food and beverage bills. Petitioner identified customers he met at various luncheon meetings and with whom he discussed business. In addition to amounts spent on luncheons, petitioner claimed as entertainment expenses $23.50 paid to the New York Paper Trade Golf Association, a group of mill *288 representatives some of whom were Marquardt & Company suppliers. The group sponsored a golf outing each year to promote public relations between the mills and the distributors. Petitioner also claimed a $33 entertainment expense incurred at an inn where petitioner spent a total of $143.73. Although the remainder of the expense was conceded to be personal, a diary notation made later by petitioner shows that the $33 related to golf expenditures for three of petitioner's customers. Out of petitioner's working day, only slightly over an hour on the average was spent at his office. The remainder of the time he contacted his customers in Manhattan, on Long Island, and in Wayne, New Jersey. Petitioner personally contacted approximately eight customers a week, although he sometimes called upon a single customer 2 or 3 times in one week. The calls were made upon inactive as well as active customers to solicit orders and to answer questions or complaints. Since petitioner did not own a car or drive one, he utilized subways, buses, and taxis for transportation. All payments of fares were made in cash for which no receipt was available. Petitioner claimed $690 for these transportation costs. *289 In addition to personal visits, petitioner often made long distance and pay telephone calls and occasionally sent telegrams to his customers. He claimed $270 as his miscellaneous business expenses attributable largely to the cost of telephone calls and telegrams. As his only contemporaneously kept record of his expenses, petitioner made notations on an office calendar of the names of customers with whom luncheon meetings had been arranged. In 1965, petitioner prepared from the calendar notations a diary containing the names of customers he met on particular days throughout 1963, the restaurants where the luncheons were held, the amounts spent by petitioner on the meals and beverages, including his own, and daily expenditures for transportation and telephone calls. The diary shows total expenditures during 1963 of $594.90 for transportation and $238.55 for telephone calls. Canceled checks were introduced which parallel the business meal 86 expenses recorded in the diary, the calendar notations having been mislaid after the diary was prepared. Facts Relating to Rental Property Expenses In 1956, petitioner converted the upstairs portion of his personal residence into a three-room *290 apartment and rented it to his mother-in-law and father-in-law for $720 per year. After his mother-in-law's death in 1961, his father-in-law continued to rent the apartment until his death in September 1962. Beginning in December 1962, petitioners attempted to find a new tenant by informing their butcher and various other acquaintance that the apartment was available. They thought the apartment was suitable only for a married couple without children and were concerned that they selected the "right" tenants. Accordingly, they made no general advertisements, nor did they consult a real estate agent. The apartment was rented to a couple, who heard of its availability through the butcher, in September 1963 for a monthly rental of $95. During the year in which the apartment was vacant the petitioners made no personal use of it. So that the apartment would be freshly repainted and repaired, petitioners waited until immediately before the new tenants moved in to install electrical fixtures and a new sink and to repaint the walls and floors. On their Federal income tax return the petitioners claimed a deduction for depreciation in the amount of $291.60 and maintenance expenses (repairs, *291 fuel, water tax and insurance) totaling $385.69. Respondent disallowed $197.73 for the reason that they represented "personal expense not properly allocable to the operation of the rental property." Petitioners' apartment was held as rental property during the entire year 1963. Facts Relating to Cash Church Contributions Petitioners are devout Catholics who attended their local parish church 110 times in 1963. During that period they contributed to the church $3.50 each week on Sundays and additional amounts during Lent and on the first Friday of each month. All contributions were made in cash, and during 1963 no record was made by the church of contributions to it. The total amount of cash contributions claimed by petitioners on their income tax return was $251, of which amount respondent allowed $104 and disallowed $147. Additional deductions totaling $269 were allowed by respondent for contributions substantiated by check or letter to five religious organizations. Petitioners made cash contributions to their parish church in 1963 of $251. Opinion Issue 1 - Entertainment and Travel Expenses Petitioner regularly entertained customers during the course of his work as *292 an outside salesman for a paper company. The volume of his sales depended in large part on the rapport developed with his customers through business luncheons and personal contacts. In turn, the amount of his commission salary was directly related to the volume of his sales. Amounts expended by petitioner on the business luncheons clearly were ordinary and necessary business expenses under section 162. Petitioner has shown that the meals were furnished under circumstances "generally considered to be conducive to a business discussion" within the quiet business meal provision of section 274(e) (1). The question remains, however, whether petitioner has satisfied the substantiation requirements of section 274(d) (2) and section 1.274-5, Income Tax Regs.
We think the canceled checks plus the diary entries made by petitioner establish the four elements required by section 274(d), i.e., the amount spent at each luncheon meeting, the date and the restaurant where each luncheon was held, the business purpose, and the name of each customer entertained. Although the diary *293 cannot be accorded the "high degree of credibility" to which the misplaced calendar notations would have been entitled, it does have weight in corroborating petitioner's testimony with regard to the meals and the canceled checks. This evidence establishes at least a minimal compliance with the Commissioner's substantiation requirements. Therefore, we conclude on this record that petitioner is entitled to a deduction for business meal expenditures of $1,000, including cash tips of 15 percent. The burden of proof is on petitioner to show that the expenditures to the New York Paper Trade Golf Association were primarily business rather than personal expenses. Although the yearly golf outing was for the avowed purpose of promoting goodwill between the mills and the distributors, 87 petitioner failed to show a direct relationship of the expense to the conduct of his business, i.e., the sale of paper products to retailers, or to an expected business benefit. See Louis Boehm, 35 B.T.A. 1106 (1937). Consequently, we believe this expense was primarily personal and not deductible under *294 section 162. Similarly, petitioner failed to establish a business purpose for the $33 golf expenditure at an inn where petitioners spent an additional $110.73 which was concededly a personal expense. A notation that customers were involved in the expenditure is not, standing alone, sufficient. Petitioner traveled extensively in the New York City area during 1963 making calls upon his customers, using subways, taxis and buses for transportation. Since documentary evidence of the amounts spent in fares is not readily available, it is not required for the substantiation of the claimed transportation expenses. Section 1.274-5(c) (2)(iii)(b), Income Tax Regs. Petitioner's records show transportation expenditures of $594.90, an amount which does not appear unreasonable under the circumstances. We therefore conclude that petitioner is entitled to a deduction in that amount as an ordinary and necessary business expense. In addition, petitioner's claimed miscellaneous business expenses of $270 are allowable to the extent of $238.55, the amount of his out-of-pocket expenditures *295 on telephone calls as shown by his records. Issue 2 - Rental Property Expenses With respect to this issue, it is our opinion that petitioners held the upstairs portion of their home as rental property during the entire year 1963, so that maintenance and other related expenses during the period attributable to that portion of the premises are deductible as expenses for the maintenance of property held for the production of income under section 212. There is no question as to substantiation of the expenses claimed. It is well established that when property is abandoned as a personal residence and is offered to the public for rent, the property becomes "property held for the production of income," whether or not it is actually rented. William C. Horrmann, 17 T.C. 903(1951); Mary Laughlin Robinson, 2 T.C. 305 (1943). Clearly, petitioners held the apartment as rental property during the period it was rented and occupied by Jeannette Moylan's parents. Moreover, petitioners made no personal use of the apartment for that period in 1963 during which a tenant could *296 not be found. Hence we are left with simply a narrow question of fact, viz., did petitioners make a bona fide attempt to rent the apartment from January to September 1963? We hold that they did. Petitioners felt the apartment was suitable only for a married couple without children and were concerned that they select the "right" tenants. Such purpose was entirely consistent with the limited notice to their butcher and to other acquaintances of the availability of the apartment for rental. This method was obviously effective because the couple that rented the apartment in September 1963 was told by the butcher that the apartment was being held for rent. Respondent relies heavily on the fact that no repairs were made to the apartment until immediately before it was rented in September 1963. We view this as a sound, and not uncommon, business practice. Thus we are unable to draw the inference that the apartment was not being held as rental property during all of 1963. We hold that the apartment was "property held for the production of income" during the entire year 1963. Accordingly, respondent erred in disallowing expenses of $197.73. Issue 3 - Cash Church Contributions Finally, *297 we find convincing the petitioner's uncontradicted testimony as to the cash contributions made by him and his wife to their parish church during 1963. A total cash contribution of $251, as claimed by petitioners, does not appear unreasonable considering the regularity of their church attendance and the generosity demonstrated by their substantiated contributions to other charities. Respondent erred in disallowing cash contributions of $147. To reflect our conclusions herein, Decision will be entered under Rule 50. Footnotes
1. All statutory references herein are to the Internal Revenue Code of 1954 unless otherwise indicated.↩