James J. Sherlock and Margaret G. Sherlock v. Commissioner.
Sherlock v. Commissioner
Docket No. 797-70.
United States Tax Court
T.C. Memo 1972-97; 1972 Tax Ct. Memo LEXIS 157; 31 T.C.M. (CCH) 383; T.C.M. (RIA) 72097; April 27, 1972, Filed James J. Sherlock, pro se, P.O. Box 1526, Hemet, Calif.Alan R. Herson, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the year 1966 in the amount of $623.51. Two issues are presented for our decision: (1) Whether petitioners are entitled to deduct under sections 167 and 212[1] claimed maintenance and depreciation deductions in respect to their former residence and its furniture; and (2) whether petitioners are entitled to a deduction under section 165 (c)(2) for a loss arising from the sale of this former residence. Findings of Fact Some of the facts have been stipulated; they are so found and incorporated herein by this reference. Petitioners, James J. and Margaret G. Sherlock, filed a joint return for the year 1966 with the district director of internal revenue at Los Angeles, California. Petitioners' legal residence on *159 the date of the filing of the petition herein was Hemet, California. During the year 1966 and to the present time, petitioner James J. Sherlock was engaged as a self-employed certified public accountant. Petitioners in September of 1959 purchased a home at 8037 Balcom Avenue, Northridge, California (hereinafter referred to as the Northridge home) at a cost of $31,867. While residing in the Northridge home they added improvements thereto at a cost of $11,387. Petitioners moved from the Northridge home in November 1964 to Hemet where they currently live. At the time of moving petitioners offered their home for sale at a price of $58,000. The market value was much lower than this initial offering price. The houses in the area of the Northridge home were all custom built, and at the time petitioners offered their own home for sale, a nearby home was sold for $48,000. Petitioners determined that $58,000 would be their asking price, not their ultimate sales price. At the request of their broker, petitioners let their furniture remain in the home in order to make it more appealing to potential purchasers or tenants. However, they had no intention of renting or selling their furniture.
*160 Petitioners' home was offered strictly for sale for the first 90 days. This was the latter part of 1964 and early 1965. Petitioners did not receive any offers to buy during this time, and at the end of this period they offered the house for rent or sale through a real estate broker. Petitioners never received any offers for rent, but they were amenable to any reasonable offers. The rent they sought was very reasonable and petitioners were extremely flexible as to terms. However, the home was never actually rented and no rental income was received. Even though the Northridge home was offered for sale or rent, petitioners' daughter continued to reside therein until the fall of 1965, at which time she moved to Hemet. Petitioners did not charge her rent during this period of occupancy. Petitioners waited quite some time without receiving any offers for rent or sale. They finally decided to drastically drop the price and accept any kind of offer they received. The only offer to purchase was accepted by petitioners. This offer culminated in an eventual sale for $43,000 in November 1966. The adjusted basis of the home in 1966 was $46,250. In their 1966 Federal income tax return petitioners *161 claimed depreciation of $4,997 and maintenance expenses of $2,158 for their Northridge home. Of the depreciation expenses $3,397 was for the house itself and $1,600 was for the furniture in the house. Of the claimed maintenance expenses, $1,042 was allowed. Petitioners took no depreciation on the house for 1964 and 1965. Petitioners in determining depreciation for 1966 used the double declining balance method of depreciation, a 25-year useful 385 life, and did not estimate a salvage value for the house. Respondent in his notice of deficiency for the taxable year 1966 increased petitioners' taxable income to reflect the disallowance of the depreciation expense and the remainder of the maintenance expense. Ultimate Findings of Fact The Northridge house was held by petitioners "for the production of income" as that phrase is used in section 167(a)(2) or 212(2). The furniture in the Northridge house was not held by petitioners "for the production of income" as that phrase is used in section 167(a)(2) or 212(2). Opinion The initial question to be answered is whether petitioners coverted the Northridge house from personal residential property to "property held for the *162 production of income" so as to entitle them to a deduction for maintenance expenses under section 212(2)[2] and depreciation expenses under section 167(a)(2). [3]
In Frank A. Newcombe, 54 T.C. 1298 (1970), we stated that whether such a conversion had been effectuated depended upon "the purpose or intention of the taxpayer in light of all the facts and circumstances." Frank Newcombe, supra at 1303. *163 In that opinion we decided the guideposts for determining the purpose of the taxpayer would be a variety of factors, and we rejected both respondent's and petitioners' arguments which attempted to enforce a single standard upon which to base our determination. In the present case we rely on the various tests enunciated in Newcombe, supra, in determining that petitioners successfully converted their home to property held for the production of income and are entitled to the claimed deductions. The primary factor in petitioners' favor is the presence of an offer to rent. Prior to Newcombe, bona fide offers to rent seemed to be a decisive factor, regardless of whether any rental income was actually earned. See Mary Laughlin Robinson, 2 T.C. 305, 308 (1943); William C. Horrmann, 17 T.C. 903 (1951); E. R. Fenimore Johnson, 19 T.C. 93, 98 (1952); and sections 1.212-1(h) and 1.212-1(b), Income Tax Regs.[4] However, cf. Gerald Melone, 45 T.C. 501 (1966), to the effect that the rental offers must be bona fide. *164 While, under Newcombe, a bona fide offer to rent is no longer considered the "focal point," we still consider it of substantial importance so long as "the adverse state of the market for rental property" does not rob such an offer of its significance. Newcombe, supra, at 1301. [5] Petitioners' offer to rent in the instant case is bona fide in light of the circumstances existing at the time. Petitioners made an initial attempt to sell only, and after an unsuccessful period of 90 days it was determined that realization of any postconversion appreciation would require a substantial waiting period. It is completely understandable that petitioners desired to turn this potential expense "eater" into an income-producing asset during this waiting period.
A factor, relied on in Newcombe, is the petitioners' desire to seek postconversion *165 386 appreciation which the majority deems to be appreciation over and above the homeowners' cost or tax basis in the property. However, we must note that in Newcombe there was an absence of a bona fide attempt to rent. The Court in Newcombe was therefore faced with determining whether property was held for the production of income when the taxpayer merely offered his property for sale. In this context the Court held that for a conversion to be accomplished, "the taxpayer must * * * be seeking to realize a profit representing postconversion appreciation." Newcombe, supra, at 1302. Because there is a bona fide attempt to rent in the case at bar, we are faced with a different factual situation, and need not give the presence or absence of this particular factor a great deal of weight. A factor militating against petitioners is the continued habitation of the Northridge house by petitioners' daughter. We deem this of importance but not of determinative significance. Petitioners themselves never reoccupied the house. They seemed extremely anxious to sell or rent this home, and we believe that their daughter would have moved at a moment's notice if a sale or rental possibility *166 arose. In light of the fact that there was such a paucity of offers, it would be unrealistic and extremely harsh to force petitioners to leave the property vacant for purposes of achieving a complete conversion. Furthemore, in the present case petitioners only claimed deductions for 1966, the year in which the entire family had completely abandoned the property. Cf. Paul M. Butler, Jr., T.C. Memo. 1970-196. While the house itself was converted to property held for the production of income, the furniture in the Northridge house was not. This furniture was not held for sale or rent. It remained in the Northridge house only as an ornament to promote the sale or rent of the house and as such is not the property subject of a depreciation deduction. See Hickman v. Commissioner, 207 F. 2d 460 (C.A. 4, 1953), affirming per curiam a Memorandum Opinion of this Court. Respondent makes a further argument regarding depreciation on the house. He contends that even assuming the Northridge house was held for the production of income within the meaning of section 167(a)(2), petitioners are not entitled to a deduction for depreciation for the following reasons: (1) *167 The house has no reasonably ascertainable useful life. Section 1.167(a)-1(b), Income Tax Regs., defines "useful life" as the period over which the asset may reasonably be expected to be useful to the taxpayer in the production of his income and not necessarily the useful life inherent in the asset. Since petitioners were holding their property for immediate sale, respondent claims that they have not established that the asset had a useful life to them of the 25 years which they used in computing the depreciation deduction. (2) The home has no depreciable basis. The basis of the depreciable property must be adjusted for salvage value to determine the adjusted basis for depreciation purposes. [6]Section 1.167(a)-1(c), Income Tax Regs., defines "salvage value" as the amount determined at the time of acquisition which is estimated will be realizable upon the sale or other disposition of an asset when it is no longer useful in the taxpayer's *168 trade or business or in the production of income. Respondent argues that the salvage value in this instance is the value at the time the asset will be retired from service or, in other words, the sale value. Since the proposed sale value at least equaled the fair market value as of the conversion date, there is nothing left of the depreciable base upon which to make a depreciation computation. *169 While these arguments have substantial appeal when the residence in question is held for immediate sale only, they are not appropriate to the present situation. Cf. Richard N. Newbre, T.C. Memo. 1971-165. The property in the instant case was held for sale or rent. Of course, petitioners were concerned with selling their house; however, it is not improbable to assume that if the sales market 387 persisted to be unfavorable and a decent rental opportunity arose, petitioners would have continued to be landlords for the entire useful life of the house. Should this happen, petitioners' situation would be similar to the taxpayer in the case of Randolph D. Rouse, 39 T.C. 70 (1962). In Rouse petitioner was in the business of buying, owning, and renting residential homes. Petitioner there rented most of his houses for a period of two years or more and did not offer them for sale as long as he could satisfactorily rent them. Respondent in disallowing a depreciation deduction on these homes presented an argument similar to the one he makes in the present case. In rejecting this argument we stated at pp. 77, 78: Petitioner's rental houses did not constitute *170 a "type of asset, where the experience of the taxpayers clearly indicates a utilization of the asset for a substantially shorter period than its full economic life," such as involved in the cases of Massey Motors v. United States and Commissioner v. Evans, 364 U.S. 92, 96, 97. We construe the facts as indicating that petitioner did not know how long his rental houses would be of profitable use to him or how long they might "be utilized until no longer capable of functioning," and therefore the depreciation base should be "recognized as to the number of years the asset is expected to function profitably in use." * * * Having found that petitioners may depreciate their home to a basis of less than the eventual actual sales price, we need not pass on the issue of whether petitioners would be entitled to a loss on such sale. Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, unless otherwise indicated.↩
2. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year - * * * (2) for the management, conservation, or maintenance of property held for the production of income; * * * ↩
3. SEC. 167. DEPRECIATION. (a) General Rule. - There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) - * * * (2) of property held for the production of income.↩
4. § 1.212-1 Nontrade or nonbusiness expenses. (h) Ordinary and necessary expenses paid or incurred in connection with the management, conservation, or maintenance of property held for use as a residence by the taxpayer are not deductible. However, ordinary and necessary expenses paid or incurred in connection with the management, conservation, or maintenance of property held by the taxpayer as rental property are deductible even though such property was formerly held by the taxpayer for use as a home. § 1.212-1 Nontrade or nonbusiness expenses. (b) * * * Similarly, ordinary and necessary expenses paid or incurred in the management, conservation, or maintenance of a building devoted to rental purposes are deductible notwithstanding that there is actually no income therefrom in the taxable year, and regardless of the manner in which or the purpose for which the property in question was acquired. * * *↩
5. See Judge Drennen concurring in Frank A. Newcombe, 54 T.C. 1298 (1970), at 1304: In my view in order for a taxpayer to be entitled to deduct expenses incurred with respect to holding property formerly occupied as his residence he must * * * bona fide offer the property for rent after he moves out and before he sells it * * *.↩
6. § 1.167(a)-1 Depreciation in general. (a) Reasonable allowance. Section 167(a) provides that a reasonable allowance for the exhaustion, wear and tear, and obsolescence of property used in the trade or business or of property held by the taxpayer for the production of income shall be allowed as a depreciation deduction. The allowance is that amount which should be set aside for the taxable year in accordance with a reasonably consistent plan * * * so that the aggregate of the amounts set aside, plus the salvage value, will, at the end of the estimated useful life of the depreciable property, equal the cost or other basis of the property as provided in section 167(g) and § 1.167(g)-1↩. * * *