Stephen **BOLARIS** and Valerie H. Bolaris, Petitioners-Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

Nos. 84–7188, 84–7382.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 11, 1985.

Decided Nov. 22, 1985.

Stephen Bolaris, pro se.

Steven Frahm, Washington, D.C., for respondent-appellee.

Before SKOPIL, REINHARDT, and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

## I. FACTS.

The taxpayers, Stephen and Valerie H. Bolaris (the "Bolarises"), purchased a home in San Jose, California, in April 1975 for $44,000 and used it as their principal residence until October 1977, when they moved into a new home they had constructed at a cost of $107,040. They attempted to sell their old home continuously from July 1977 until it was sold in August 1978 for $70,000.

In the beginning, the Bolarises tried unsuccessfully for 90 days to sell their old home. At that point they rented the home on a month-to-month basis (to "lessen the burden of carrying the property") at a fair rental value in an arm's length transaction. After eight months the Bolarises asked the tenant to leave in the hopes of improving the saleability of the house. To that end they cleaned and repainted the home. About six weeks after the original tenant left, and after the house was improved, the Bolarises received their first offer to buy the old home, which the Bolarises accepted. Because the purchasers were having difficulty obtaining financing, the Bolarises agreed to rent the old home to the buyers until they obtained financing. The buyers rented the home for about one month, and finally bought it on August 14, 1978 for $70,000.

The Bolarises filed joint income tax returns reporting salaries of $29,021 and interest of $281 in 1977 and salaries of $33,-355 and interest of $286 in 1978. In addition, they received rent from their old home of $1,271 in 1977 and $2,717 in 1978. From this income they deducted depreciation of $373 in 1977 and $1,120 in 1978 and rental expenses of $1,365 in 1977 and $3,607 in 1978. The IRS disallowed the depreciation and rental expense (except interest and real estate taxes of $486 in 1977 and $2,915 in 1978).[1] The reason given in the statutory notice for disallowing the depreciation and rental expenses was that the rental of the home "was not entered into as a trade or business or for the production of income." These disallowances, along with a disallowed IRA deduction and California State Disability Insurance deduction, resulted in

deficiencies of $486 in 1977 and $408 in 1978.

The Bolarises filed a *pro se* petition in the Tax Court under the simplified procedure for small tax cases. I.R.C. §§ 7456(d)(3), 7463. On the day of trial the IRS filed an amended answer asserting an increased deficiency of $3,339 and raising for the first time the issue of whether the Bolarises were entitled to deferred recognition of the gain from the sale of their old home under I.R.C. section 1034.[2] The IRS contended that if the Bolarises were entitled to deferred gain on the sale of their old home under § 1034, they were not entitled to depreciation or rental expenses on the old home under §§ 167 and 212.[3] As far as we have been able to determine, this is an issue of first impression. The Tax Court, in a reviewed decision,[4] permitted deferred

---

1. Interest and real estate taxes qualified as itemized deductions under §§ 163 and 164 of the Internal Revenue Code of 1954, 26 U.S.C. §§ 163 and 164 (further references to the Internal Revenue Code of 1954 cited as "I.R.C.") whether or not the old residence was held for production of income.

2. During the tax years in question section 1034 provided in part:

   **(a) Nonrecognition of gain**
   If property (in this section called "old residence") used by the taxpayer as his principal residence is sold by him and, within a period beginning 18 months before the date of such sale and ending 18 months after such date, property (in this section called "new residence") is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price (as defined in subsection (b)) of the old residence exceeds the taxpayer's cost of purchasing the new residence.
   **(b) Adjusted sales price defined**
   **(1) In general**
   For purposes of this section, "adjusted sales price" means the amount realized, reduced by the aggregate of the expenses for work performed on the old residence in order to assist in its sale.
   **(2) Limitations**
   The reduction provided in paragraph (1) applies only to expenses—
   (A) for work performed during the 90-day period ending on the day on which the contract to sell the old residence is entered into;

   (B) which are paid on or before the 30th day after the date of the sale of the old residence;
   and
   (C) which are—
   (i) not allowable as deductions in computing taxable income under section 63(a) (defining taxable income), and
   (ii) not taken into account in computing the amount realized from the sale of the old residence.
   Section 1034 has since been amended to allow non-recognition of gain if the new residence is purchased within two years before or after the date of sale of the old residence. Pub.L. No. 97–34, Title I, §§ 112(b)(4), 122(a), (b), 95 Stat. 195, 197.

3. Section 167 provides in part:
   **(a) General rule.**—There shall be allowed as a depreciation deduction a reasonable allowance for ... obsolescence)—
   (1) of property used in the trade or business, or
   (2) of property held for the production of income.

   .     .     .     .

   Section 212 provides in part:
   In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—
   (1) for the production or collection of income;
   (2) for the management, conservation, or maintenance of property held for the production of income ...

4. This case was tried before a Special Trial Judge who wrote an opinion; that opinion was

recognition of the gain from the sale of the old home, but denied the Bolarises' claimed depreciation and rental expense under I.R.C. sections 167 and 212, accepting the IRS's theory that depreciation and rental expenses, and deferred recognition of gain were mutually exclusive as a matter of law. The Bolarises appealed *pro se* to this Circuit.

## II. DELAYED RECOGNITION OF GAIN.

The first issue is whether the Bolarises are entitled to delayed recognition of gain on the sale of their old home under section 1034. As the Tax Court stated, the IRS "does not seriously challenge the applicability of section 1034 to the sale in question, stating that 'the best view of the facts of this case is that [the Bolarises] qualify for section 1034 treatment. [Section 1034] is available because [the Bolarises] never converted the house from personal use.'" *Bolaris v. Commissioner*, 81 T.C. 840, 844 (1983). The Tax Court held that the Bolarises rental of their old residence prior to its sale did not preclude the applicability of section 1034, citing *Clapham v. IRS*, 63 T.C. 505 (1975). *Bolaris*, 81 T.C. at 845–47.

The Tax Court's findings regarding whether the Bolarises were entitled to nonrecognition of gain on the sale of their old home are subject to a clearly erroneous standard of review. *See Crocker v. Commissioner*, 571 F.2d 338, 338 (6th Cir.1978). We agree for the reasons stated by the Tax Court that the rental of the Bolarises' old home prior to its sale does not preclude the nonrecognition of gain realized on the sale of the old home. *See Bolaris*, 81 T.C. at 844–47. The legislative history of section 1034 supports the nonrecognition of gain in this case by stating:

> The term "residence" is used in contradistinction to property used in trade or business and property held for the production of income. Nevertheless, the mere fact that the taxpayer temporarily

rents out either the old or the new residence may not, in the light of all the facts and circumstances in the case, prevent the gain from being not recognized. For example, if the taxpayer purchases his new residence before he sells his old residence, the fact that he rents out the new residence during the period before he vacates the old residence will not prevent the application of this subsection.

H.R.Rep. No. 586, 82d Cong., 1st Sess. 109, *reprinted in* 1951 U.S.Code Cong. & Ad. News 1781, 1896. *See also Clapham v. Commissioner*, 63 T.C. 505, 509–12 (1975). We affirm the Tax Court's decision permitting deferred recognition of gain from the sale of the Bolarises' old home.

## III. DEDUCTIONS FOR PROPERTY HELD FOR THE PRODUCTION OF INCOME.

A more difficult question is raised by the Tax Court's denial of depreciation and other rental expense deductions. Section 167 permits depreciation deductions for "property held for the production of income." I.R.C. § 167(a)(2). Section 212 permits deductions for insurance and miscellaneous maintenance expenses. *See id.* § 212 (permitting deductions for "ordinary and necessary expenses" relating to "the management, conservation, or maintenance of property held for the production of income").

### A. Effect of Nonrecognition of Gain.

The Tax Court accepted the IRS's argument that a residence which qualifies for nonrecognition of gain under section 1034 cannot, as a matter of law, also be held for the production of income under sections 167 or 212. *Bolaris*, 81 T.C. at 848–49. We review *de novo* this legal question involving statutory interpretation. *Dumdeang v. Commissioner*, 739 F.2d 452, 453 (9th Cir.1984).

The IRS's argument isolates the sentence in the legislative history of section

reviewed by the full Tax Court, with a majority of those judges participating in the review adopting the opinion of the Special Trial Judge,

two judges concurring, and four judges dissenting.

1034 quoted above that "[t]he term 'residence' is used in contradistinction to property used in trade or business and property held for the production of income." H.R. Rep. No. 586, *supra.* However, this sentence must be read in context with the remainder of the legislative history and in light of the historical background of sections 167, 212, and 1034. In 1942 Congress enacted the statutory predecessors to sections 167 and 212 which for the first time permitted deductions for expenses involving property held for the production of income. *See* 1 B. Bittker, *Federal Taxation of Income, Estates and Gifts,* ¶¶ 20.-1.2 & 23.2.1 (1981). The following year the Tax Court held that property which has been abandoned as a residence and which has been diligently listed for rent or sale qualifies as property held for the production of income for purposes of obtaining rental expense deductions. *See Robinson v. Commissioner,* 2 T.C. 305, 307 (1943). This was true even though the property in *Robinson* was never rented. *Id.* at 307, 309.

Section 1034 was enacted in 1951. Congress was presumably aware of the *Robinson* decision at the time section 1034 was enacted. As noted above, the legislative history of section 1034 begins by stating that " 'residence' is used in contradistinction to ... property held for the production of income." H.R.Rep. No. 586, *supra.* However, despite Congress' presumed awareness that an abandoned residence which was rented could qualify as property held for the production of income, the legislative history further states that *"[n]evertheless,* the mere fact that the taxpayer temporarily rents out either the old or the new residence may not, in light of all of the facts and circumstances in the case, prevent the gain from being not recognized." *Id.* (emphasis added). Thus, we read the legislative history of section 1034 as stating that a former residence could qualify for nonrecognition of gain even if the residence was temporarily rented and also qualified as being held for the production of income. This interpretation has never been questioned until this lawsuit.

■ The IRS apparently has now come to the conclusion that permitting both rental expense deductions and nonrecognition of gain provides an improper "windfall" to taxpayers. Our response is three-fold. First, not all rentals of former residences will qualify for rental expense deductions. For example, a rental for less than fair market value will most likely not qualify as property being held for the production of income. *See Jasionowski v. Commissioner,* 66 T.C. 312, 322 (1976) ("voluntary acceptance of rent at an amount substantially below fair market value is a clear indication" of a lack of profit-motive). Second, to the extent any "windfall" exists it is limited to a period of two years, the time within which the old residence must be sold to qualify for nonrecognition of gain. *See* I.R.C. § 1034(a). Third, if Congress had intended to prevent a "windfall" to taxpayers, it easily could have included a provision stating that application of section 1034 precluded rental expense deductions under sections 167 and 212. Congress did not draft such a provision and we refuse to imply one. We therefore reject the IRS's argument that a residence which qualifies for nonrecognition of gain cannot also be held for the production of income. If the IRS wants such a rule, it should ask Congress to enact it.

**B. Entitlement to Rental Expense Deductions.**

■ The remaining issue is whether the Bolarises are entitled to the claimed deductions in this case. An individual is entitled to deductions under sections 167 and 212 if "the individual [engaged] in the activity with the predominant purpose and intention of making a profit." *Allen v. Commissioner,* 72 T.C. 28, 33 (1979). *See* I.R.C. § 183. The burden of proving a profit motive is on the petitioner. *Allen,* 72 T.C. at 34. The existence of a profit motive is a factual question subject to clearly erroneous review. *Jackson v. Commissioner,* 708 F.2d 1402, 1405 (9th Cir. 1983).

■ The Tax Court recently set forth a non-exhaustive list of five factors to be considered in determining whether an individual has converted his residence to property held for the production of income. *See Grant v. Commissioner*, 84 T.C. 809 (1985). The five factors, which we adopt, are as follows:

(1) the length of time the house was occupied by the individual as his residence before placing it on the market for sale; (2) whether the individual premanently [sic] abandoned all further personal use of the house; (3) the character of the property (recreational or otherwise); (4) offers to rent; and (5) offers to sell.

*Id.* 825. *See also Newcombe v. Commissioner*, 54 T.C. 1298, 1300–01 (1970).[5] No one factor is determinative and all of the facts and circumstances of a particular case must be considered. *See* § 1.183–2(a), Income Tax Regs. (26 C.F.R.).

■ Several factors strongly support the conclusion that the Bolarises possessed the requisite profit-motive based upon their rental of the old home.[6] First, this case involves both offers to rent and offers to sell. More importantly, the Bolarises actually rented their old home at fair market rental. As the Tax Court's majority opinion recognized, "renting the residence at its fair market value would normally suggest that the taxpayer had the requisite profit objective." *Bolaris*, 81 T.C. at 849. *See also Eisenstein v. Commissioner*, 47 T.C.M. (P–H) ¶ 78,095, at 78–442 (1978) ("If [the taxpayers'] primary motive was profit, they would certainly have tried to maximize that profit by renting at the highest possible price.").

Second, the Bolarises permanently abandoned the old home when they moved to their new residence. Even if the Bolarises had wanted to return to the old home, they would have been unentitled legally to do so because the home was rented almost continually from the time they vacated the home until it was sold. *See Langford v. Commissioner*, 50 T.C.M. (P–H) ¶ 81,532, at 81–2061 (1981).

Third, the old home offered no elements of personal recreation. As stated in the Income Tax Regulations, "a profit motivation may be indicated where an activity lacks any appeal other than profit." § 1.183–2(b)(9), Income Tax Regs. (26 C.F.R.). *See Allen*, 72 T.C. at 36; *Langford*, 50 T.C.M. (P–H) at 81–2061.[7]

We view the Bolarises' ancillary desire to sell the old home as an insignificant factor in determining their profit-motive. *See Bolaris*, 81 T.C. at 854 (Wilbur, J., dissenting) (citing cases). Our conclusion is supported by *Sherlock v. Commissioner*, 31 T.C.M. (CCH) 383 (1972). In *Sherlock*, the taxpayers abandoned their old residence in November 1964 and offered it for sale for the first ninety days. *Id.* at 385. When no offers to buy were received the old resi-

---

**5.** Section 1.183–2(b) of the Income Tax Regulations (26 C.F.R.) contains a separate list of nine factors to be considered in determining whether an activity is engaged in for profit. As the Tax Court has noted, however, the factors listed in section 1.183–2(b) "are more relevant to farming and hobbies than to rental property." *See Smith v. Commissioner*, 50 T.C.M. No. 366, 1985 T.C.M.Dec. (CCH) 42,444 (1985); *Jasionowski*, 66 T.C. at 321 n. 6. The section 1.183–2(b) factors provide general guidance but are not as helpful in this case as those set forth in *Grant*.

**6.** The Bolarises also contend that they intended to make a profit from the appreciation on the old home during the time it was being rented. However, immediately upon leaving the old home, the Bolarises placed the home on the market hoping to sell it as soon as possible. "The placing of the property on the market for immediate sale, at or shortly after the time of its abandonment as a residence, will ordinarily be strong evidence that a taxpayer is not holding the property for postconversion appreciation in value." *Newcombe*, 54 T.C. at 1302. We therefore reject the Bolarises' contention that they were holding the old home for postconversion appreciation.

**7.** We find the remaining *Grant* factor, the length of time the house was occupied as a residence before placing it on the market for sale, to be unhelpful in this case. The Bolarises occupied the old home as their principal residence from August 1975 to October 1977. This length of occupancy is too short to adequately indicate "the personal nature of expenses subsequently incurred while holding the property for postoccupancy sale" but is too long to adequately indicate that such expenses are non-personal. *Newcombe*, 54 T.C. at 1300.

dence was offered for rent or sale until it was finally sold in November 1966. The rental price sought was found to be reasonable but the home was never actually rented. *Id.* at 384. The Tax Court permitted rental expense deductions under sections 167 and 212 even though the taxpayers intended to sell the home. The court stated that "[i]t is completely understandable that petitioners desired to turn this potential expense eater [the old residence] into an income-producing asset during [the] waiting period [prior to sale]." *Id.* at 385.

The IRS argues that the Bolarises could not have intended to make a profit because the rental payments they received were less than their mortgage payments. Sustained unexplained losses are probative of a lack of profit motive but they present only one non-determinative factor to be considered. *Jasionowski,* 66 T.C. at 319; *Langford,* 50 T.C.M. (P–H) at 81–2060. We believe that the other factors discussed above outweigh the existence of short-term losses experienced by the Bolarises.

In denying the Bolarises' rental expense deductions, the Tax Court relied upon the IRS's new theory that a residence which qualifies for nonrecognition of gain cannot also be held for the production of income. In light of the factors discussed above indicating that the Bolarises possessed the requisite profit motive, we conclude that the Tax Court clearly erred in denying the deductions claimed under sections 167 and 212.

## IV. CONCLUSION.

The Tax Court's decision permitting deferred recognition of gain from the sale of the Bolarises' old home is AFFIRMED. The decision denying depreciation and rental expense deductions is REVERSED AND REMANDED for redetermination of the deficiencies.

**1.** A deduction may also be taken if the property is used in a "trade or business," but as the parties agree, that provision is inapplicable here.

REINHARDT, Circuit Judge, concurring and dissenting:

While I agree that the Bolarises are entitled to deferred recognition of the gain on the sale of their home under I.R.C. § 1034, I cannot agree that they are also entitled to take deductions under I.R.C. §§ 167 and 212 for the period during which they were attempting to sell that property. Under section 1034, deferred recognition of gain is allowed only if the property sold is the taxpayer's "principal residence." § 1034; Treas.Reg. § 1.1034–1(c)(3). On the other hand, under sections 167 and 212 deductions can be taken for depreciation and maintenance expenses only if the property is "held for the production of income." [1] The two phrases are mutually exclusive as are the respective forms of tax treatment.

Courts have long recognized the difference between a residence and income producing property. It has been well-established law for over 40 years that deductions are not allowable under sections 167 and 212 for expenses incurred with respect to a taxpayer's residence, whether principal or not. *Brady v. Commissioner,* 1983 T.C.M. (P–H) ¶ 83,163, *aff'd mem.* 729 F.2d 1445 (3d Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 569, 83 L.Ed.2d 509 (1984); *Meredith v. Commissioner,* 65 T.C. 34 (1975); *Robinson v. Commissioner,* 2 T.C. 305 (1943); Treas.Reg. §§ 1.167(a)–2, 1.212–1(h).

It would seem that the words of the statute as well as the interpretations of the courts compel the conclusion that if the sale of a "principal residence" results in a deferral of gain under section 1034, then the seller is barred from taking deductions under sections 167 and 212 for expenses incurred with respect to that property. Given the clarity of statutory language and the consistency of judicial interpretation, there would seem to be no reason to turn, as the majority does, to the legislative history.[2]

**2.** *See Focht v. Commissioner,* 68 T.C. 223, 244 (1977) (Hall, J., dissenting): "It has been said, with more than a grain of truth, that judges in

In any event, the legislative history is plain and unambiguous.[3] It states: "[t]he term 'residence' is used in contradistinction to ... property held for production of income." H.R.Rep. No. 586, 82d Cong., 1st Sess. 109, *reprinted in* 1951 U.S.Code Cong. & Ad.News 1781, 1896. Thus, the legislative history confirms what we have already noted: "residence" and "property held for the production of income" are mutually exclusive terms.

The legislative history also states that the fact that the taxpayer rents out his old house may not, in light of all the facts and circumstances, be inconsistent with a finding that the old house is still the taxpayer's residence. *Id. See* Treas.Reg. § 1.1034-1(c)(3). The majority seizes on the statement that the temporary renting out of a home does not deprive it of its character as the taxpayer's principal residence. On the basis of this rather benign proposition and without any particular further explanation, the majority leaps to the conclusion that a taxpayer's home can at once be *both* a residence and property held for the production of income. In fact, as has been demonstrated above, the legislative history provides compelling support for precisely the opposite conclusion. Contrary to the majority's assertion, the proposition that "residence" and "income producing property" are antithetical terms is not novel: it has been advanced by the Commissioner and accepted by the Tax Court, either expressly or impliedly, on a number of occasions. *See, e.g., Trisko v. Commissioner,* 29 T.C. 515, 520 (1957); *Stolk v. Commissioner,* 40 T.C. 345, 353–54 (1963), *aff'd mem.* 326 F.2d 760 (2d Cir.1964); *Daves v. Commissioner,* 54 T.C. 170, 175 (1970); *Barry v. Commissioner,* 1971 T.C.M. (P–H) ¶ 71,-179;[4] *Rogers v. Commissioner,* 1982 T.C.M. (P–H) ¶ 82,718.[5]

Moreover, a holding that the Bolarises cannot take deductions under sections 167 and 212 does not mean that they are not entitled to any deductions at all for expenses relating to their home. Under sections 163, 164, and 183(b)(1) the Bolarises were entitled to, and did, deduct in full the mortgage interest and real estate taxes that they paid. In addition, section 183(b)(2) authorizes the deduction of the depreciation and maintenance expenses to the extent that the income from the rental of the house exceeds the amount of the mortgage interest and real estate tax payments. It is only because the Bolarises' rental income was less than the amount of those payments that they cannot deduct at least some portion of the maintenance and depreciation expenses they incurred.[6]

Because I believe that the judgment of the Tax Court should be affirmed in its entirety, I respectfully dissent.

---

tax cases these days tend to consult the statute only when the legislative history is ambiguous."

**3.** *Cf. Bluff v. Father Gray* (H.L.) per Lord Mildew: "If Parliament does not mean what it says it must say so." (Quoted in A.P. Herbert, *The Uncommon Law: The Employment Tax* (1935)).

**4.** While it appears that in *Trisko* and *Barry* the taxpayers were allowed to take certain deductions for depreciation as well as take advantage of § 1034, neither case held that a taxpayer can take deductions under §§ 167, 212 when § 1034 is also applicable. First, in neither case did the Commissioner challenge the taking of the deductions; rather he challenged only the availability of § 1034. In the case before us, of course, the Commissioner is challenging both. Second, in both *Trisko* and *Barry* the court explicitly held that the taxpayers' old house was not held for the production of income. The Bolarises, however, will be entitled to deductions under §§ 167, 212 only if their old house *was* held for the production of income. *Trisko*

and *Barry* both stated that § 1034 was not applicable if the taxpayers' old house was held for the production of income.

**5.** The majority relies heavily on *Robinson, supra,* in reaching its conclusion. However, *Robinson* merely holds that if the taxpayer has actually *abandoned* his residence, the property can then become property held for the production of income. Thus, it provides no support for the majority's conclusion. It follows therefore that there is no validity to the majority's theory that the existence of *Robinson* at the time Congress enacted § 1034 demonstrates that Congress intended homeowners to receive the benefit of both § 1034 and §§ 167, 212 simultaneously.

**6.** For a fuller explanation of the somewhat complicated workings of § 183(b), see Judge Korner's concurrence in the Tax Court's opinion in this case, 81 T.C. at 850–52.