MARCELL N. RAND AND JANE E. RAND, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 79464. Filed September 30, 1960.

*Morgan P. Ames, Esq.*, and *Philip M. Drake, Esq.*, for the petitioners.

*Douglas D. Robertson, Esq.*, for the respondent.

ARUNDELL, *Judge:* Respondent determined deficiencies in income tax for the calendar years 1954, 1955, and 1956 in the amounts of $1,658.11, $8,041.09, and $6,420.45, respectively.

The only issue we need decide is whether the respondent erred in disallowing certain expenses for maintaining and operating a yacht during certain months of the calendar years 1954 through 1956. Another issue was assigned but has been conceded.

FINDINGS OF FACT.

The stipulated facts are so found and are incorporated herein by this reference.

Petitioners are individuals, husband and wife, with residence in Darien, Connecticut. Joint United States individual income tax returns for the calendar years 1954, 1955, and 1956 were filed with the director of internal revenue for the district of Connecticut.

Petitioner Marcell N. Rand, hereinafter sometimes referred to as petitioner, for the past 10 years or more has been vice president of Remington-Rand in charge of all international operations.

Petitioner has been interested in yachts since childhood. Prior to 1954 petitioner owned a 42-foot pleasure cruiser called the *Ce-el*, which he sold in 1953. In 1954 he purchased a yacht called *Ermahal*, which he renamed "*Jamara*." This yacht was still owned by petitioner on December 31, 1956.

The *Jamara* is a power cruiser with gross tonnage of 52 tons; length 75 feet; beam 14 feet; designed by Henry C. Grebe and Company; built in 1930; and has a cruising speed of 12 knots. The *Jamara* has sleeping accommodations for seven, has two toilets and a shower bath, officer's stateroom and crew's quarters, together with a galley. The yacht is equipped with a dinghy, an outboard motor, radio, automatic pilot, depth recorder, and telephone.

The *Jamara* was used by petitioners for pleasure in the waters around Connecticut during the summer months and was then taken to the Florida waters for the winter months.

In 1954, 1955, and 1956, petitioner listed the *Jamara* with seven or more well-known brokerage firms for charter in Florida waters during the winter seasons. These firms were not successful in obtaining a charterer of the vessel during any of the years here in question. While the *Jamara* was available for charter during these winter seasons, it was also used by petitioner and his family for pleasure during a part of each of those seasons.

Petitioner did succeed in chartering the *Jamara* in 1958 for 3 months at the rate of $4,500 per month. It was also chartered for a while in 1959.

During the last 7 months of 1954 and during the 12 months of 1955 and 1956 petitioner paid expenses for maintaining and operating the *Jamara*, as follows:

| Kind of expense | 1954 | 1955 | 1956 |
|---|---|---|---|
| Salaries | $4,237.56 | $6,927.02 | $7,367.23 |
| Subsistence | 1,030.00 | 1,833.55 | 1,099.62 |
| Laundry | 60.39 | 61.38 | 287.41 |
| Telephone | 8.81 | 5.39 | 123.28 |
| Fuel | 1,167.64 | 1,415.86 | 1,061.82 |
| Wharfage, dockage, electric power | 145.85 | 503.49 | 486.28 |
| Work clothes and uniforms | 168.27 | 187.01 | 167.07 |
| Repairs | 2,825.55 | 6,694.75 | 5,307.09 |
| Insurance | 702.80 | 1,368.60 | 1,290.64 |
| Purchases | 1,535.09 | 1,117.34 | 2,384.80 |
| Usable supplies | 39.37 | 48.73 | 158.43 |
| Miscellaneous | 98.89 | 198.19 | 587.44 |
| Total | 12,020.22 | 20,361.31 | 20,321.11 |

Petitioners deducted on their returns a portion of the above expenses under the caption "Charter Expenses" in amounts as follows:

| | |
|---|---|
| Return of 1954 | $2,810.34 |
| Return of 1955 | 9,861.50 |
| Return of 1956 | 10,160.55 |

The respondent disallowed the claimed deductions and in a statement attached to the deficiency notice explained his disallowance as follows:

It has been determined that your expenses in operating the yacht JAMARA in Florida waters during the years 1954 to 1956, inclusive, while the yacht was offered for charter, are not deductible under any section of the Internal Revenue Code of 1954. Accordingly, the deductions claimed on your income tax returns have been disallowed * * *

The yacht *Jamara* was held by petitioners primarily for pleasure rather than for the production of income.

OPINION.

Petitioners contend that the deductions which they claimed on their returns for charter expenses are fully deductible as nontrade or nonbusiness expenses under section 212(2) of the Internal Revenue Code of 1954.[1]

Respondent contends that the claimed expenses are personal, living, and family expenses and, therefore, are not deductible. Sec. 262, I.R.C. 1954.[2] Petitioners are not claiming any deductions under section 162(a) of the 1954 Code for any expenses paid or incurred "in carrying on any trade or business."

Respondent has not questioned the amounts here involved, or that the claimed expenses were ordinary and necessary and were paid during the taxable years for the management, conservation, or maintenance of the yacht *Jamara*. The point at which the parties take issue is whether the yacht was "held for the production of income."

The prototype of section 212, *supra*, was section 23(a)(2), I.R.C. 1939, as amended by section 121 of the Revenue Act of 1942. This amendment to the 1939 Code was also made retroactive to all prior revenue acts. Therefore, cases decided prior to the approval of the 1942 Act are of little if any help in deciding whether expenses such as we have here are or are not deductible.

---

[1] SEC. 212. EXPENSES FOR PRODUCTION OF INCOME.

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

\* \* \* \* \* \* \*

(2) for the management, conservation, or maintenance of property held for the production of income; or

[2] SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES.

Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.

The applicable regulation is section 1.212–1 of Income Tax Regulations under the Internal Revenue Code of 1954, issued January–December 1957, as publication No. 329–3, the material part of which is in the margin.[3] This regulation or its prototype has been cited with approval in *Warren Leslie, Sr.*, 6 T.C. 488, 494, and other cases.

The question before us narrows down to whether the *Jamara* was held during the winter months primarily for the production of income or as a sport, hobby, or recreation. If held primarily for the latter, the expenses claimed are nondeductible under section 262, *supra*, which is one of the "provisions of subtitle A" mentioned in the regulation.

Petitioner testified that when he purchased *Jamara* he felt there was a real opportunity for making a profit in connection with the chartering of the vessel in Florida waters during the winter seasons. He was an experienced yachtsman and had been interested in yachts since childhood. His father has been going to Florida every year for the past 40 years and, except for the war, petitioner has been going there for periods of 2 or 3 weeks in the wintertime for the past 20 years. Petitioner observed that for the past 10 years there has been an increasing demand for charter boats in Florida waters in the winter season. Shortly after petitioner purchased *Jamara*, he listed it for charter with seven or more well-known brokerage firms but never succeeded in chartering the vessel for any period of time during the years in question. Petitioner used the yacht for pleasure in Connecticut waters during the summer months and also during a part of each of the winter seasons in Florida. In the summer of 1956 petitioner acquired an island on a key near Nassau. He built a house there and took *Jamara* to the island during the last 2 weeks of 1956.

---

[3] Sec. 1.212–1 NONTRADE OR NONBUSINESS EXPENSES.—* * *

(b) The term "income" for the purpose of section 212 includes not merely income of the taxable year but also income which the taxpayer has realized in a prior taxable year or may realize in subsequent taxable years; * * * Similarly, ordinary and necessary expenses paid or incurred in the management, conservation, or maintenance of a building devoted to rental purposes are deductible notwithstanding that there is actually no income therefrom in the taxable year, and regardless of the manner in which or the purpose for which the property in question was acquired. * * *

(c) Expenses of carrying on transactions which do not constitute a trade or business of the taxpayer and are not carried on for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income, but which are carried on *primarily* as a sport, hobby, or *recreation are not allowable* as nontrade or nonbusiness expenses. The question whether or not a transaction is carried on *primarily* for the production of income or for the management, conservation, or maintenance of property held for the production or collection of income, rather than *primarily* as a sport, hobby, or *recreation,* is not to be determined solely from the intention of the taxpayer but rather from all the circumstances of the case. For example, consideration will be given to the record of prior gain or loss of the taxpayer in the activity, the relation between the type of activity and the principal occupation of the taxpayer, and the uses to which the property or what it produces is put by the taxpayer.

*   *   *   *   *   *   *

Nor does section 212 allow the deduction of any expenses which are disallowed by any of the provisions of subtitle A of the Internal Revenue Code of 1954, even though such expenses may be paid or incurred for one of the purposes specified in section 212. [Emphasis supplied.]

As stated in the above regulation, with which we fully agree, the question whether property is held primarily for the production of income or primarily as a sport, hobby, or recreation is not determined solely from the intention of the taxpayer but rather from all the circumstances of the case. Here, petitioner made no definitive dedication, conversion, or appropriation of the yacht to income-producing purposes apart from pleasure. It was at all times available to him for his personal use and was so used by him whenever he so desired. Petitioner was no doubt trying to recoup some of his expenses in taking the boat to Florida in the winter and back to Connecticut in the summer. We are unable to find as an ultimate fact, after taking into consideration all the circumstances of the case, that the *Jamara* was held during the winter months primarily for the production of income rather than for pleasure. In *Mary Laughlin Robinson*, 2 T.C. 305, and *William C. Horrmann*, 17 T.C. 903, cases relied upon by petitioners, there was a definite abandonment from holding for personal use to a holding for income-producing purposes. No such definite abandonment is present in the instant case.

We hold that the yacht here in question was held primarily for pleasure rather than the production of income, and that the expenses claimed are not deductible. Sec. 262, *supra; Warren Leslie, Sr., supra; Charles F. Neave*, 17 T.C. 1237, 1243.

*Decision will be entered for the respondent.*