MICHAEL LYON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lyon v. Commissioner
Docket No. 4761-74
United States Tax Court
T.C. Memo 1977-239; 1977 Tax Ct. Memo LEXIS 197; 36 T.C.M. (CCH) 979; T.C.M. (RIA) 770239; July 27, 1977, Filed Michael Lyon, pro se. Joseph F. Maselli, for the respondent. FEATHERSTON
MEMORANDUM FINDING OF FACT AND OPINION FEATHERSTON, Judge: This case was assigned to and heard by Special Trial Judge Randolph F. Caldwell, Jr., pursuant to the provisions of section 7456(c) of the Internal Revenue Code *198 of 1954, as amended, and General Order No. 5 of this Court. [1] The Court agrees with and adopts Special Trial Judge Caldwell's opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE CALDWELL, Special Trial Judge: Respondent determined a deficiency in petitioner's 1971 Federal income tax in the amount of $2,128.88. The issue is whether petitioner's chartering his yacht was an activity not engaged in for profit within the meaning of section 183. Resolution of that issue will determine whether petitioner is entitled to deduct certain expenses incurred and paid in connection with such activity under section 162 or 212 of the 1954 Code. Petitioner has conceded one adjustment in the statutory notice of deficiency relating to the disallowance of a deduction of $342.25 for employee business expenses. FINDINGS OF FACT Petitioner is an individual whose legal residence at the time the petition herein was filed was Loveladies, New Jersey. During the taxable year involved (1971), as well as prior thereto *199 and thereafter, petitioner was a pilot for Pan-American World Airways. In 1967 he took a vacation at St. Thomas, in the Virgin Islands. He had been interested in sailing since childhood and while on his vacation, he chartered a yacht from Richard Avery of Avery's Boathouse, Inc. While petitioner was on vacation, he looked into the possibility of owning his own yacht and making it available for charter to others when he was not using it himself. Mr. Avery indicated that if petitioner purchased a small yacht, he would place it in his fleet and manage it for him. The petitioner did not seek to discuss the prospects of the venture with anyone other than officers of Avery's Boathouse, which would increase its income through petitioner's activities whether or not petitioner made a profit. On Mr. Avery's recommendation that a 30-foot Pearson 300 yacht would be attractive to the clientele in the charter hire market, in early 1969 petitioner placed an order for such a yacht through Avery's Boathouse, which not only operated a marina where dockage and maintenance services were provided, but also was a Pearson dealer. Therefore on August 1, 1969, petitioner and the Pearson Company entered *200 into a 5-year lease, with option to purchase covering the yacht which he had ordered. He named the yacht the Little Clipper. Petitioner sailed the yacht from the Pearson Company's yard at Newport, Rhode Island to St. Thomas. Petitioner was obligated under his agreement with Pearson for monthly payments of $467.86. Although petitioner desired to have the Little Clipper for his personal use when he wanted to do so, he placed the yacht with Avery's Boathouse for charter-hire hoping thereby to recoup the amount of his monthly payments to Pearson and his other costs with respect to the Little Clipper. No formal contract was entered into between petitioner and Avery's Boathouse regarding the chartering, maintenance, and dockage of the Little Clipper, and petitioner was free to use his yacht at any time. Avery's Boathouse listed the Little Clipper as being available for charter in its advertisement in YachtingMagazine, and petitioner placed advertising in the Pilot, the magazine of the Aircraft Owners and Pilots Association as well as the magazine published by the Airline Pilots Union. Petitioner also did word-of-mouth advertising among his fellow *201 pilots whom he believed to be good prospects because they, like petitioner, were entitled to reduced-fare air transportation to and from St. Thomas. Petitioner did not maintain any books of account of his own with respect to the Little Clipper, but relied instead upon semi-annual statements from Avery's Boathouse showing income from charter-hire as well as maintenance, dockage, and other charges. Petitioner performed some minor maintenance on the Little Clipper, but the major maintenance was performed by Avery's Boathouse.
During 1971, petitioner used the yacht himself twice, for one week each time. There were eight charters of the Little Clipper in 1971, none of which exceeded one week. Income from these charters aggregated $3,284.50, on which commission was paid to Avery's Boathouse of $492.60, yielding a net charter-hire income of $2,791.90. During the same year, petitioner incurred the following expenses with respect to the yacht: General Expenses
$4,173.13
Interest
1,899.00
Depreciation
1,220.00
The parties have stipulated that in each of the five years that petitioner's yacht was placed for charter-hire it had losses in the below-listed *202 amounts: Rental Loss
Interest on
Total Year
Per Return
Yacht
Loss
1969
$2,975.00
$ 316.00
$3,291.00
1970
4,653.36
2,506.86
7,160.22
1971
3,763.00
1,899.00
5,662.00
1972
2,698.00
1,291.32
3,989.00
The Little Clipper was the only yacht ever owned or leased by petitioner. In December 1972, petitioner removed his boat from the fleet of boats offered for charter by Avery's Boathouse; and, in 1973 he exercised his option to purchase the yacht and sold it in December of that year. On his 1971 Federal income tax return, petitioner claimed a rental loss deduction of $3,763.44, and an interest expense deduction for the above-mentioned $1,899. The respondent disallowed these deductions in his statutory notice of deficiency. OPINION The factual question which is at the root of the controversy between petitioner and respondent is whether petitioner's activities vis-a-vis the Little Clipper were engaged in for profit. Section 183 provides in here material part, as follows: SEC. 183. ACTIVITIES NOT ENGAGED IN FOR PROFIT. (a) General Rule.--In the case of an activity engaged in by an individual * * *, if such activity is not *203 engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section. (b) Deductions Allowable.--In the case of an activity not engaged in for profit to which subsection (a) applies, there shall be allowed -- (1) the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit, and (2) a deduction equal to the amount of the deductions which would be allowable under this chapter for the taxable year only if such activity were engaged in for profit, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1). (c) Activity Not Engaged in for Profit Defined.- For purposes of this section, the term "activity not engaged in for profit" means any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212. Whether the loss is deductible turns on whether the activity involving the yacht was one petitioner entered into for profit. We must consider *204 all the circumstances surrounding petitioner's activity to determine whether his motive was profit or personal pleasure. Specifically, we must decide whether chartering the yacht was done to produce a reasonable return on an investment or simply help meet the cost of something petitioner wanted to own for his personal enjoyment. One of the relevant factors is petitioner's approach to the venture. Petitioner's entry into yacht chartering was not businesslike. While enjoying himself on a yacht belonging to someone else, he decided that he would like to own one himself. The discussions with Richard Avery are one step a person interested in profit would take. However, the profit seeker would make a more thorough examination of the situation before investing. He would talk to the operators of other marinas, if only to compare their prices for services. Petitioner continued his unbusinesslike approach. He did not keep records or insist that a log book be maintained; rather, he relied totally on the statements furnished by Avery's Boathouse. Although the venture never made a profit he did not investigate the feasibility of changes that might help produce one.His effort to acquire *205 any profit was minimal, which is inconsistent with a profit motive connected with an investment of this type. The limited use petitioner made of the yacht does not help establish that petitioner kept the Little Clipper to make a profit. Chartering a yacht to others in order to afford to keep it is not the same as having a profit motive. Martin v. Commissioner,50 T.C. 341 (1968); Rand v. Commissioner,34 T.C. 1146 (1960). Petitioner had the use of the yacht any time he desired it. The chartering merely enabled him to keep the Little Clipper for his personal enjoyment. Making a profit was an incidental consideration; petitioner hoped that some profit might accompany his personal enjoyment of the yacht. That petitioner never made a profit is relevant to our consideration. It is true that some activities entered into for profit produce only losses. However, five years of losses point to the motive of personal gratification and when considered with the other circumstances surrounding this venture, show that petitioner was not acting with a profit motive. Taking into consideration the nature of the property, petitioner's attitude toward *206 it, his unbusinesslike approach, and the five years of losses, we conclude that petitioner's activity was not engaged in for profit. * * *
In accordance with the foregoing, Decision will be entered for respondent. Footnotes
1. Under General Order No. 5 the post-trial procedures set forth in Rule 182 of the Court's Rules of Practice and Procedure are not applicable to this case.↩