T.C. Memo. 1997-190


UNITED STATES TAX COURT


FRANK R. COURBOIS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 24296-93.                    Filed April 24, 1997.


Micael C. Chandler, for petitioner.

Ann L. Baker, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

WHALEN, Judge:  Respondent determined that petitioner is liable for the following deficiency, addition to tax, and penalty for 1990:

| Deficiency | Addition to Tax Sec. 6651(a)(1) | Penalty Sec. 6662 |
|---|---|---|
| $26,206 | $9,155 | $5,241 |

Unless stated otherwise, all section references are to the Internal Revenue Code as amended and in effect during 1990. After concessions by petitioner, the issues for decision are: (1) Whether petitioner is entitled to treat a sailboat as property held for the production of income and to deduct certain expenditures and depreciation attributable to the sailboat or whether petitioner's activity with respect to the sailboat is an "activity not engaged in for profit", as defined by section 183(c); and (2) whether petitioner is liable for the accuracy-related penalty under section 6662(a), as determined by respondent.

FINDINGS OF FACT

Petitioner resided in Oklahoma City, Oklahoma, when the instant petition was filed. The stipulation of facts filed by the parties and the exhibits attached thereto are hereby incorporated in this opinion.

Petitioner is an attorney who specializes in criminal law. In 1985, he purchased a 63-foot sailboat named Cloudia for $110,000. The Cloudia is a former Norwegian fishing vessel that was built in 1934. It was featured in a motion picture that was originally released with the title "Sea Gypsy" and was later renamed "The Shipwreck".

At no time after petitioner's purchase of the Cloudia in 1985 through the time of trial has the Cloudia been

seaworthy.  Among other problems, when petitioner purchased the Cloudia it was infested with beetles and other parasites, and her frames were badly worn back from the planking of the vessel.  The sails on the boat were theatrical sails that had been used in making the above-mentioned motion picture and were not designed to withstand winds.  Further, the sailboat has a foreign hull which prevents it from being chartered in the United States.

After petitioner purchased the Cloudia, he began to repair the boat, as his finances permitted, in an attempt to make her seaworthy.  This work has included the following:  Repair of the decks; repair of the masts; repair of the spreaders; restoration of the frames and planking; purchase of new sails; installation of a new running rig fore and aft; and restoration of the interior of the boat, including new reefers, sinks, stove, floors, heads, and bunks.  Additionally, in or around 1987, petitioner rewired and replaced the plumbing on the boat.

During the years 1987 through 1990, petitioner occasionally allowed friends or acquaintances to rent the Cloudia as a place to stay.  The persons who rented the Cloudia included a boatwright who had worked on the boat and several members of the Oklahoma City Boat Club. Petitioner's activity of renting the Cloudia was sporadic.

He did not advertise the Cloudia's availability for rental. A summary of the income realized and expenses incurred by petitioner from 1985 through the year in issue with respect to the Cloudia is as follows:

| Year | Rental Income | Mortgage Interest | Cash Expenditures | Depreciation | [1]Net Income (Loss) |
|------|------|------|------|------|------|
| 1985 | -- | $5,242 | -- | -- | [2] |
| 1986 | -- | 4,800 | -- | -- | [2] |
| 1987 | $825 | -- | $3,920 | $3,929 | ($7,024) |
| 1988 | 1,200 | -- | 4,768 | 30,690 | (34,258) |
| 1989 | 680 | -- | 12,049 | 29,038 | (40,407) |
| 1990 | 600 | -- | 13,014 | 20,741 | (33,155) |
| Total | 3,305 | 10,042 | 33,751 | 84,398 | (114,844) |

[1]The amounts in this column were not deducted dollar-for-dollar on petitioner's returns because petitioner treated the rental of the Cloudia as a passive activity subject to the limitation on the deduction of passive activity losses set forth in sec. 469.

[2]No net income (loss) figure is computed for this year because petitioner claims that the vessel was not placed in service until 1987.

Petitioner did not maintain any formal or consistent method of recording his expenditures with respect to the Cloudia. He occasionally collected receipts and stored them in a box. He kept receipts on the sailboat, at home, and at his attorney's office. Petitioner used the same bank account for his law practice, his activities involving the Cloudia, his personal expenses, and his residential rental properties, discussed below. Petitioner did not maintain a ledger or set of books with respect to any of his activities involving the Cloudia.

Over the years, petitioner has built two sailboats. One was a 24-foot sailboat which petitioner sold. There is no information in the record concerning the costs petitioner incurred in building the 24-foot sailboat or the price for which petitioner ultimately sold the boat. Petitioner also built a 33-foot sailboat. As of the time of trial, petitioner still owned the 33-foot sailboat, and he used it for recreational purposes.

In summary, petitioner reported the following adjusted gross income on his Form 1040, U.S. Individual Income Tax Return for 1990:

| | |
|---|---:|
| Interest income | $29 |
| Business income (Schedule C) | 78,253 |
| Capital gain (Schedule D) | 71,683 |
| Other gains or (losses) (Form 4797) | 3,612 |
| Rents, royalties, partnerships, estates, trusts, etc. (Schedule E) | (78,751) |
| Total adjustments | (5,925) |
| Adjusted gross income | 68,901 |

The above business income consists of the net profit from petitioner's law practice as reported on the Schedule C, Profit or Loss from Business, attached to petitioner's 1990 tax return, as follows:

| | |
|---|---:|
| Gross income | $157,391 |
| Total expenses | 79,138 |
| Net profit (loss) | 78,253 |

Petitioner has conceded that for the year in issue, he omitted from his Schedule C gross receipts from his law practice in the amount of $19,125.

Petitioner reported the following capital gains and losses on the Schedule D attached to his return, and he reported the following ordinary income on Form 4797, Sales of Business Property, attached to his return:

|  | Schedule D | Form 4797 |
|---|---|---|
| Gain from the sale of 2709 NW 12th | $17,026 | $2,762 |
| Gain from the sale of 1809 Carey Place | 58,113 | 850 |
| Loss from the sale of the "Edmond Lot" | (3,456) | -- |
|  | 71,683 | 3,612 |

Finally, petitioner reported rental income and expenses from the Cloudia and three residential rental properties on Schedule E, Supplemental Income and Loss. Petitioner's Schedule E claims an aggregate loss of $78,751, of which $74,350 is attributable to the Cloudia. Petitioner's Schedule E reports the following:

| Activity | 2709 NW 12th | 1813-15 NW 22d | 1809 Carey Pl. | Cloudia | Total |
|---|---|---|---|---|---|
| Rents received | -- | $3,914 | -- | $600 | $4,514 |
| Cleaning and maintenance | -- | 350 | -- | 3,500 | -- |
| Insurance | -- | 585 | -- | -- | -- |
| Legal and professional fees | -- | -- | -- | 500 | -- |
| Mortgage interest | -- | 630 | -- | -- | -- |
| Repairs | -- | 1,335 | -- | 1,257 | -- |
| Supplies | -- | 1,783 | -- | -- | -- |
| Taxes | -- | -- | -- | 557 | -- |
| Slip rental | -- | -- | -- | 6,900 | -- |
| Utilities | -- | 1,736 | -- | 300 | -- |
| Depreciation | $113 | 1,483 | -- | 20,741 | -- |
| Total expenses | 113 | 7,902 | -- | 33,755 | -- |

| | | | | | |
|---|---|---|---|---|---|
| Loss | (113) | (3,988) | -- | (33,155) | -- |
| Deductible rental loss | (113) | (3,116) | (1,172) | (74,350) | (78,751) |

Petitioner treated his activities with respect to the Cloudia and the three residential rental properties identified on Schedule E as passive activities within the meaning of section 469(c). Accordingly, petitioner filed Form 8582, Passive Activity Loss Limitations, with his 1990 return. In substance, the losses deducted on Schedule E in the aggregate amount of $78,751 were computed as follows:

| Activity | 2709 NW 12th | 1813-15 NW 22d | 1809 Carey Pl. | Cloudia | Total |
|---|---|---|---|---|---|
| Current year gains | $19,788 | -- | $58,963 | -- | $78,751 |
| Current year loss | (113) | ($3,988) | -- | ($33,155) | -- |
| Accumulated loss | -- | (617) | (1,172) | (76,738) | -- |
| Total gains | 19,675 | -- | 57,791 | -- | 77,466 |
| Total losses | -- | (4,605) | -- | (109,893) | (114,498) |
| Ratio of losses | -- | 0.04022 | -- | 0.95978 | 1 |
| Allowed losses | -- | (3,116) | -- | (74,350) | (77,466) |
| Passive activity loss carryforward | -- | (1,489) | -- | (35,543) | (37,032) |
| Amount deducted | (113) | (3,116) | (1,172) | (74,350) | (78,751) |

In the subject notice of deficiency, respondent determined that petitioner is not entitled to deduct the loss claimed on Schedule E with respect to the Cloudia. The notice of deficiency explains this adjustment as follows:

> It is determined the Schedule E passive
> activity loss of $74,350.00 relating to the
> vessel, Cloudia, is disallowed because it
> has not been established that the property is
> held for use by customers pursuant to Internal
> Revenue Code Temporary Regulation 1.469-1T(e)(3)
> and 1.469-4T(b). In addition, the deductions

are not allowed pursuant to Internal Revenue Code
Section 212 because it has not been established
that the property is held for the production of
income.  The allowable passive activity losses
have been adjusted to reflect the disallowance
of this loss, figured as shown on the attached
Exhibits #1 through #6.

The notice of deficiency also determines, as an "alterna-

tive position", that the loss attributable to the Cloudia

is subject to the limitation set forth in section 183.

The notice of deficiency states as follows:

Alternatively, if the determination set forth
above is not sustained for the taxable year ended
December 31, 1990, see the alternative position
pursuant [sic] under Section 183 of the Internal
Revenue Code attached.

* * * * * * *

Expenses incurred in connection with an activity
not engaged in for profit are generally deduct-
ible only to the extent of income from such
activity.  However, those expenses which would
otherwise be allowable under the Internal Revenue
Code are deductible even if they exceed the
income from the activity, but reduce the amount
of income against which other expenses can be
offset.  The other expenses then offset the
reduced income in the following order:  (1)
operating expenses other than depreciation and
(2) depreciation and other basis adjustment
items.  Accordingly, your taxable income for
taxable year ended December 31, 1990, is
decreased $557.  * * *

Notwithstanding the amount of the adjustment set forth

in the explanation quoted above, respondent determined an

adjustment with respect to petitioner's passive activity

- 9 -

losses in the amount of $74,763.  The notice of deficiency does not explain how this adjustment was computed or why it is $413 more than the deduction claimed with respect to the Cloudia.  The amount of the adjustment appears to be the difference between the aggregate amount deducted on Schedule E, $78,751, and the current year loss with respect to the property at 1813-15 NW 12th, $3,988.  Thus, it appears that in computing the adjustment respondent disallowed a current loss with respect to the property at 2709 NW 12th in the amount of $113 and disallowed losses accumulated from prior years with respect to the properties at 1813-15 NW 22d and 1809 Carey Place in the amount of $617 and $1,172, respectively.

OPINION

The principal issue in this case involves respondent's disallowance of $74,763 of the deductions claimed by petitioner on the Schedule E, Supplemental Income and Loss, filed as part of petitioner's 1990 return.  Petitioner argues that this amount is deductible under section 212(1) or (2).  The premise of petitioner's argument is that the entire amount of the adjustment is attributable to "Petitioner's conduct of the Cloudia activity".  However, according to petitioner's 1990 return, after applying the passive loss limitation rules of section 469, petitioner

claimed a deduction of only $74,350 with respect to the
Cloudia.  The record does not explain the nature of the
additional amount disallowed by respondent, viz $413, and
petitioner has raised no issue regarding this additional
amount.

The dispute between the parties over the deduction of
petitioner's alleged losses incurred in connection with
the Cloudia turns on whether the losses were incurred in
an activity not entered into for profit.  Section 183(a)
provides:

> (a) General Rule.--In the case of an
> activity engaged in by an individual or an S
> corporation, if such activity is not engaged
> in for profit, no deduction attributable to
> such activity shall be allowed under this
> chapter except as provided in this section.

For this purpose, section 183(c) defines the phrase
"activity not engaged in for profit" to mean "any activity
other than one with respect to which deductions are allow-
able for the taxable year under section 162 or under
paragraph (1) or (2) of section 212."  If we find on the
basis of all of the facts and circumstances of the case
that petitioner's activity with respect to the Cloudia
was "not engaged in for profit" within the meaning of
section 183(c), then no deductions with respect to that

activity are allowable under section 212. Sec. 183(c); sec. 1.183-2(a), Income Tax Regs.

An activity is engaged in for profit if the taxpayer has an "actual and honest objective of making a profit". Keanini v. Commissioner, 94 T.C. 41, 46 (1990); Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). Although the expectation of profit need not be reasonable, it must be shown that a bona fide profit objective did exist. Golanty v. Commissioner, 72 T.C. 411, 425-426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(a), Income Tax Regs. In this context, profit means economic profit, independent of tax savings. Hulter v. Commissioner, 91 T.C. 371, 393 (1988). Whether petitioner engaged in the Cloudia activity with the requisite profit objective is a question of fact to be determined from all the facts and circumstances. Keanini v. Commissioner, supra at 46; Golanty v. Commissioner, supra at 426; secs. 1.183-2(a), 1.212-1(c), Income Tax Regs. Petitioner bears the burden of proving that respondent's determination is wrong. Rule 142(a), Tax Court Rules of Practice and Procedure (hereinafter all Rule references are to the Tax Court Rules of Practice and Procedure).

Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of nine factors to be considered in determining whether an activity is engaged in for profit. These factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort of the taxpayer which is expended in carrying on the activity; (4) the expectation that the assets which are used in the activity may appreciate in value; (5) the taxpayer's success in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profit, if any, which is earned; (8) the taxpayer's financial status; and (9) whether the taxpayer experiences personal pleasure or recreation in carrying on the activity.

Based entirely upon his own testimony at trial, petitioner argues that he purchased the Cloudia in 1985 and held it in 1990 with the actual and honest objective of making a profit. He claims to have purchased the Cloudia for the purpose of renting it to the partners of a bookstore venture to be opened in Hawaii on the Island of Maui. Shortly after purchasing the sailboat, petitioner claims that the bookstore venture was abandoned because the partners were not able to acquire certain property on which

to operate the bookstore. At the same time, petitioner claims to have discovered various defects in the Cloudia, described above, that necessitated substantial repairs in order to make the vessel seaworthy. Petitioner's brief describes his objective as follows:

> Subsequently, upon the failure of this [book-store] venture, and the discovery of the defects in the vessel's condition, he [petitioner] decided to overhaul the vessel, and rent it as he could (and he has rented it, albeit nominally as of 1990), until such time is [sic] it became seaworthy enough to sell at a price that would maximize the recovery on his investment.

In 1987, after owning the vessel for 2 years, petitioner permitted an individual who had worked on the vessel to stay on it in return for rent and claims to have thus placed the vessel in service as a rental activity. From 1987 through 1990, petitioner claims to have realized a total of $3,305 in rental income from permitting various friends and acquaintances to stay aboard the Cloudia. During the same period, petitioner claims to have incurred cash expenses of $33,751 and depreciation of $84,398, or total expenses of $118,149, attributable to this activity.

After considering the record in this case, we find that petitioner has failed to prove that he engaged in his activity with respect to the Cloudia with the requisite profit objective. We base our decision

generally, on all of the facts and circumstances of the record, and specifically, on the factors set forth in section 1.183-2(b), Income Tax Regs.

Petitioner acknowledged during his testimony that he was not businesslike in his approach to the activity. See sec. 1.183-2(b)(1), Income Tax Regs. He did not maintain receipts of his cash expenditures. He did not establish a bank account for the activity. He did not maintain any books and records for the activity. He did not advertise the availability of the vessel.

We are skeptical about petitioner's testimony concerning his alleged intent for acquiring and holding the Cloudia. We find it difficult to believe that petitioner, an attorney, would pay $110,000 for a sailboat without first determining whether it was seaworthy and whether it could be used for its intended purpose. We note that petitioner made passing reference during his testimony to an "initial survey" of the vessel, but he failed to introduce any such survey into evidence.

We are also skeptical about petitioner's assertion that he held Cloudia for appreciation in value. See sec. 1.183-2(b)(4), Income Tax Regs. Petitioner testified that as of the time of trial he could sell the Cloudia for "somewhere" between $125,000 and $150,000. However, as

of the end of 1990, petitioner had received total rental income from the Cloudia of $3,305 and had made cash expenditures amounting to $33,751. Thus, as of the end of 1990, petitioner had made net out-of-pocket expenditures of $30,446 on the Cloudia. That amount, plus the original cost of the Cloudia, $110,000, put petitioner's total investment in the sailboat, as of 1990, at $140,446. Petitioner also testified that at the time he purchased the Cloudia for $110,000, it would have cost him approximately $60,000 to restore the boat. Thus, considering petitioner's testimony, we cannot find that petitioner has shown that he could profit from appreciation in the value of the Cloudia. See Cannon v. Commissioner, 949 F.2d 345, 352 (10th Cir. 1991) (a record of substantial losses over many years and the unlikelihood of achieving a profitable operation are important factors bearing on a taxpayer's intention), affg. T.C. Memo. 1990-148; Antonides v. Commissioner, 91 T.C. 686, 696-697 (1988) ("any such appreciation would have allowed petitioners to do little more than break even" and "Chartering a yacht to others in order to afford to keep it through tax savings for one's personal enjoyment is not the same as having a profit objective"), affd. 893 F.2d 656 (4th Cir. 1990); see also

Martin v. Commissioner, 50 T.C. 341, 364 (1968); Rand v. Commissioner, 34 T.C. 1146, 1149-1150 (1960).

We also note that during 1990 petitioner reported substantial income from sources other than his activity with respect to the Cloudia. See sec. 1.183-2(b)(8), Income Tax Regs. He reported gross income from his legal practice in the amount of $157,391, and a net profit from that activity in the amount of $78,253. In addition, petitioner reported capital gains of $75,139 from the sale of 2709 NW 12th and 1809 Carey Place, two of his rental properties, ordinary income of $3,612 from the sale of those two rental properties, and a loss of $3,456 from the sale of the "Edmond Lot". In sum, for the 1990 tax year, petitioner realized income of $153,548 from sources other than the rental of the Cloudia.

Finally, the record suggests that petitioner derived personal enjoyment from his activity with respect to the Cloudia. See sec. 1.183-2(b)(9), Income Tax Regs. Petitioner testified that ever since he was young he wanted to be involved with boats, and that the first time he stepped onto the Cloudia he "felt like Errol Flynn". Petitioner also testified that he had built two other sailboats, one which he sold, and one which he retained for recreational purposes.

In summary, petitioner has not shown that he engaged in his activity with respect to the <u>Cloudia</u> with an actual and honest objective of making a profit. Accordingly, we find on the basis of all of the facts and circumstances of this case that petitioner's activity with respect to the <u>Cloudia</u> is an activity not engaged in for profit and is subject to the limitation on deductions imposed by section 183.

We note that the notice of deficiency refers to the application of section 183 as respondent's "alternative position". The notice of deficiency also suggests that the adjustment with respect to the <u>Cloudia</u> would be computed differently under section 183 than the adjustment determined in the notice. For this reason, the Court will enter decision in this case under Rule 155.

## Accuracy-Related Penalty

Respondent determined that petitioner's underpayment of income tax for 1990 was due to negligence or disregard of rules or regulations, and that he is liable for the accuracy-related penalty under section 6662(a). Petitioner bears the burden of proving that respondent's determination is wrong. Rule 142(a).

Section 6662(a) imposes an accuracy-related penalty equal to 20 percent of the portion of the underpayment

which is attributable to negligence or disregard of rules or regulations. The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and the term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). Negligence is defined as the lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. E.g., Neely v. Commissioner, 85 T.C. 934, 947 (1985).

Section 6664(c) provides that no penalty shall be imposed under section 6662 with respect to any portion of an underpayment if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. Petitioner does not assert that he has met the requirements of section 6664(c).

Petitioner argues that the penalty under section 6662(a) should not be imposed for two reasons. First, petitioner argues that the "tax treatment of his investment in the vessel Cloudia * * * was * * * based on substantial authority". According to petitioner:

> An amount of understatement attributable
> to a treatment by a taxpayer based on sub-
> stantial authority does not constitute a
> "substantial understatement" by definition.
> IRC § 6662 (d)(1)(A).

Second, petitioner argues:

> the failure of Respondent to object to this
> treatment during examinations by Respondent
> of Petitioner's returns in prior years,
> although not rising to the level of estoppel,
> tend[s] to support the inference that the
> position adopted by Petitioner was not under-
> taken without due regard for the rules and
> regulations and was adequately disclosed.

As to petitioner's first argument, we agree that
for the purpose of determining whether the portion of
any underpayment is attributable to a "substantial under-
statement", the amount of the understatement is reduced
by that portion attributable to the "tax treatment of
any item by the taxpayer if there is or was substantial
authority for such treatment".  Sec. 6662(d)(2)(B)(i).
However, we do not agree with petitioner's assertion that
there was substantial authority for the tax treatment of
petitioner's loss attributable to the Cloudia.  For the
reasons discussed above, we have found that petitioner
did not engage in the Cloudia activity with an actual and
honest objective of making a profit.  We know of no
authority that permits a deduction under section 212 for
the expenses paid or incurred with respect to such an
activity.  See Antonides v. Commissioner, 91 T.C. 686,
704 (1988), affd. 893 F.2d 656 (4th Cir. 1990).

We also reject petitioner's second argument that respondent's failure to "object" to petitioner's treatment of losses from the Cloudia during prior audit examinations proves that there was no negligence. Petitioner testified that the first audit during which this issue was raised was the audit that led to the subject notice of deficiency. Based upon these facts, we cannot draw the "inference" offered by petitioner that "the position adopted by Petitioner was not undertaken without due regard for the rules and regulations and was adequately disclosed."

In this case, there is ample evidence of negligence. Petitioner kept no regular records or logs of his activities with respect to the Cloudia, he commingled funds from his business and personal activities, and he claimed the subject deductions despite the fact that he had no actual and honest objective of making a profit. Further, petitioner concedes the omission of $19,125 of income from his legal practice. Petitioner has offered no evidence to rebut respondent's determination of negligence. Accordingly, we find that petitioner has not met his burden, and we sustain respondent's determination of the section 6662 penalty.

To reflect the foregoing,

Decision will be entered

under Rule 155.