T.C. Memo. 1999-326

UNITED STATES TAX COURT

ROBERT BRYAN HUDNALL AND VICTORIA A. HUDNALL, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8338-97.                    Filed September 29, 1999.

Robert Bryan Hudnall and Victoria A. Hudnall, pro sese.

Helen F. Rogers, for respondent.

MEMORANDUM OPINION

DEAN, Special Trial Judge: Respondent determined a
deficiency in petitioners' Federal income tax of $3,664 for the
taxable year 1993. Unless otherwise indicated, section
references are to the Internal Revenue Code in effect for the
year in issue, and all Rule references are to the Tax Court Rules
of Practice and Procedure.

The issues for decision are: (1) Whether petitioners'
horse-related activities were engaged in for profit; (2) whether

petitioners are entitled to take a deduction for real estate taxes; and (3) whether petitioners are entitled to deduct mortgage interest.

Some of the facts have been stipulated and are so found. The stipulation of facts is incorporated herein by this reference. At the time the petition was filed, petitioners resided in Baltimore, Maryland.

## Background

Immediately before moving to Baltimore, Maryland, petitioners resided in Shelby County, Tennessee. Petitioners owned two quarter horses and a pony, which they paid to have boarded at local stables. Their daughters were experienced riders with trophies earned from competition. Petitioners also claim to jointly own a house at 4429 Kerwin Drive in Shelby County, Tennessee, with Mrs. Hudnall's mother, who is also their tax adviser.

Sometime shortly before 1993, petitioners moved to Baltimore, Maryland. They rented a dilapidated farm at 315 East Jarrettsville Road, where, after renovation, they lived and kept their horses without paying others to care for them. The 68-acre farm has since been subdivided and developed into town houses. Petitioners state that, initially, they were not aware of the owner's plans to subdivide the property, though they admit it was common knowledge to at least some of the neighbors. In 1994,

however, it became clear to petitioners that the lessor had plans to develop the property.

Mr. Hudnall worked full time as an interstate truck driver while in Tennessee and continued to do so after the family's move to Maryland.  Mr. Hudnall was away from his family most of the year at issue and did not actively participate on the farm.  He reported wages of $38,721 from his truck driving in 1993.

Petitioners' stated intent in moving to Maryland was to launch Victoria Stables, a horse-boarding venture to have been managed by Mrs. Hudnall.  Mrs. Hudnall had no formal training for horse boarding but asserts that she grew up around and had knowledge of horses because of her father, a longtime horse hand.

Petitioners do not account for any business preparation other than selecting and renovating the farm.  Petitioners do not claim that they advertised the business or had any detailed plans on how to conduct the business.  All work on the farm, primarily cleaning stables, was done by Mrs. Hudnall or by family members lending a helping hand.

According to petitioners, their clientele consisted of a polo team, a short-term visitor from Brazil, and an independent horse trainer.  Petitioners claim that their clients handled the daily maintenance of their horses.  Petitioners produced neither receipts nor averments from any of the clients.  Any other

records evidencing the existence of the business were, somehow, lost. Petitioners could not remember the prices they charged.

Of the $1,500 monthly rent for the property, petitioners contend that $1,200 was attributable to the horse farm, with the remaining $300 accounting for the residence. Petitioners continued to rent the farm until sometime in 1994. Petitioners claim to have moved from the farm to an apartment at some point in 1993 but produce no lease agreement other than that for the farm residence.

Petitioners claim that their barns were full at times. They spent a good deal of money in initially repairing the property, and according to petitioners, bought heavy machinery to facilitate a horse-boarding business. They reported gross receipts of only $2,260. Their Schedule C for 1993 lists expenses of $15,720 in rent,[1] only $360 in supplies, and $839 in utilities.

At trial, petitioners presented a statement by the owner of the property confirming its rental and rate for the year at issue, one collection notice for a utility bill against "Victoria Stables" for $839, a receipt from a local newspaper for advertising a sale of one of the Hudnalls' quarter horses, and

---

[1]On their Schedule C for 1993 petitioners list the $15,720 farm rent on line 20 "RENT OR LEASE--Machinery & Equipment--Other Business Prop."

testimony by Mr. Hudnall and a relative as to the functioning of the boarding operation.

Petitioners produced property tax receipts from Shelby County, Tennessee, for 4429 Kerwin Drive addressed to Victoria A. Hudnall. Petitioners also presented a letter from the Internal Revenue Service (IRS), dated January 21, 1997, rescinding an offer to allow a deduction for interest payments on the Kerwin Drive property as a "second home".

In the notice of deficiency, respondent determined that petitioners' horse-boarding activity was not engaged in for profit, disallowing all of the Schedule C expenses. Respondent also disallowed deductions of mortgage interest and real estate taxes for the home at 4429 Kerwin Drive because of lack of substantiation.

Discussion

## I. Horse Boarding

Section 183(a) generally provides that if an activity engaged in by an individual is not entered into for profit, no deduction attributable to the activity shall be allowed, except as otherwise provided in section 183(b).[2] An "activity not

---

[2]Sec. 183(b)(1) permits a deduction for expenses that are otherwise deductible without regard to whether the activity is engaged in for profit, such as personal property taxes. Sec. 183(b)(2) permits a deduction for expenses that would be deductible only if the activity were engaged in for profit, but
(continued...)

engaged in for profit" means any activity other than one for which deductions are allowable under section 162 or under paragraph (1) or (2) of section 212. Sec. 183(c).

Deductions are allowed under section 162 for the ordinary and necessary expenses of carrying on an activity that constitutes the taxpayer's trade or business. Deductions are allowed under section 212 for expenses paid or incurred in connection with an activity engaged in for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income. With respect to either section, however, the taxpayer must demonstrate a profit objective for the activities in order to deduct associated expenses. See Jasionowski v. Commissioner, 66 T.C. 312, 320-322 (1976); sec. 1.183-2(a), Income Tax Regs. The profit standards applicable to section 212 are the same as those used in section 162. See Agro Science Co. v. Commissioner, 934 F.2d 573, 576 (5th Cir. 1991), affg. T.C. Memo. 1989-687; Antonides v. Commissioner, 893 F.2d 656, 659 (4th Cir. 1990), affg. 91 T.C. 686 (1988); Allen v. Commissioner, 72 T.C. 28, 33 (1979); Rand v. Commissioner, 34 T.C. 1146, 1149 (1960).

---

[2](...continued)
only to the extent that the gross income derived from the activity exceeds the deductions allowed by sec. 183(b)(1).

Whether the required profit objective exists is to be determined on the basis of all the facts and circumstances of each case. See Hirsch v. Commissioner, 315 F.2d 731, 737 (9th Cir. 1963), affg. T.C. Memo. 1961-256; Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(a), Income Tax Regs. While a reasonable expectation of profit is not required, the taxpayer's objective of making a profit must be bona fide. See Elliott v. Commissioner, 84 T.C. 227, 236 (1985), affd. without published opinion 782 F.2d 1027 (3d Cir. 1986). In making this factual determination, we give greater weight to objective factors than to a taxpayer's mere statement of his or her intent. See Independent Elec. Supply, Inc. v. Commissioner, 781 F.2d 724, 726 (9th Cir. 1986), affg. Lahr v. Commissioner, T.C. Memo. 1984-472; Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs.

Section 1.183-2(b), Income Tax Regs., sets forth nine factors we consider to determine whether taxpayers engaged in a venture with a profit objective. They include: (1) The manner in which the taxpayers carried on the activity; (2) the expertise of the taxpayers or their advisers; (3) the time and effort expended by the taxpayers in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate

in value; (5) the success of the taxpayers in carrying on other similar or dissimilar activities; (6) the taxpayers' history of income or loss with respect to the activity; (7) the amount of occasional profits that are earned; (8) the financial status of the taxpayers; and (9) whether elements of personal pleasure or recreation are involved. No single factor is controlling, and we do not reach our decision by merely counting the factors that support each party's position. See Dunn v. Commissioner, 70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980); sec. 1.183-2(b), Income Tax Regs. Rather, the relevant facts and circumstances of the case are determinative. See Golanty v. Commissioner, supra at 426.

After considering all the factors, we agree with respondent that petitioners did not have an actual and honest objective of making a profit because: (1) Petitioners enjoyed substantial personal pleasure and recreation from their horse-related activities; (2) they did not have any experience or expertise in operating a horse-related business; (3) petitioners' clientele remains unverified; and, (4) petitioners did not carry on their activities in a businesslike manner. See sec. 1.183-2(b), Income Tax Regs. Moreover there is no indication that petitioners had any chance of recovering the loss they suffered. See Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967); sec. 1.183-2(b)(4), Income Tax Regs.

The weight and credibility of the evidence presented suggests that petitioners may have accepted some income for the use of their farm which defrayed the cost of their recreational horse-related activities.  Still, the expectation of profit was lacking.

Petitioners enjoyed substantial personal benefits from the use of the farm, but that, by itself, does not preclude their activities from being "for profit".  See Jackson v. Commissioner, 59 T.C. 312, 317 (1972).  However, the presence of personal motives may indicate that the activity is not engaged in for profit.  See Glenn v. Commissioner, T.C. Memo. 1995-399, affd. without published opinion 103 F.3d 129 (6th Cir. 1996).

When petitioners moved to Maryland and rented the farm at issue, they saved themselves the cost of boarding their own horses elsewhere and had greater access to the horses for their daughters.  Petitioners' testimony describes activities which did not exceed what would be necessary to care for their own horses.  Barns and stables were renovated.  Family members helped in exchange for meals.  Mrs. Hudnall cleaned stables.  These activities do not go beyond those related to the care of one's own horses.

Petitioners did not produce credible evidence that the horse-related activity had a chance of recovering the losses it had incurred.  See Bessenyey v. Commissioner, supra at 274.  The

landlord had slated the farm for subdivision before it was rented to petitioners.  In addition, the claim that their paying boarders each assumed the responsibility of feeding, cleaning, grooming, and providing medical services to their own horses undercuts the notion that petitioners were experienced equestrians involved in boarding horses for profit, or that they expected their receipts to ever exceed the rental expense of the farm plus supplies and other expenses.  From Mr. Hudnall's testimony, it seems that petitioners had abandoned any hope of "making it financially" by August 1993, well before the end of the taxable year.

The absence of any business documentation whatsoever is indicative that the activity was not engaged in for profit. While a taxpayer need not maintain a sophisticated cost accounting system, the taxpayer should keep records that enable the taxpayer to make informed business decisions.  See Burger v. Commissioner, 809 F.2d 355, 359 (7th Cir. 1987), affg. T.C. Memo. 1985-523.  Petitioners provided no agreements, receipts, or any other verification of the existence of clients.  They presented no business plan, canceled checks, business bank account, profit projection, consultants, or record of consultations.  Petitioners state that any and all of these items, if they existed, were simply "lost", save for a collection notice naming Victoria Stables as a debtor to Baltimore Gas & Electric.  Petitioners

cannot remember any price they might have charged a customer or client.

In sum, on the basis of all the facts and circumstances, we hold that the record shows petitioners did not engage in their horse-related activity with the actual and honest objective of earning a profit. Nor have petitioners properly substantiated any expenses, other than the farm lease expense, for any activities which occurred, if at all, during 1993. We find that petitioners' deductions for their horse-boarding activity are limited to their reported gross income from the activity. See sec. 183(b)(2).

## II. Real Estate Taxes

Petitioners may not deduct real estate taxes for 1993. Under section 164, a deduction is allowed for any State, local or foreign real property tax. See sec. 164(a)(1). Receipts produced by petitioners, however, in an attempt to substantiate their deduction, clearly state that the taxes were paid on March 17, 1997, not the year at issue. Respondent properly disallowed this deduction.

## III. Mortgage Interest

Petitioners may not deduct mortgage interest for 1993. Qualified residence interest is deductible if paid during the taxable year. See sec. 163(h)(2)(D). Petitioner produced no documentation of interest paid. Petitioners rely solely on a

settlement offer sent to them by the IRS which would have allowed petitioners to deduct interest paid with respect to the property at issue as a "second home".  Petitioners did not respond timely to the offer.  The offer was rescinded by the IRS.  Petitioners did not show at trial that they are entitled to the claimed deduction.  See Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

To reflect the foregoing,

<u>Decision will be</u>

<u>entered under Rule 155</u>.